UNITED STATES DISTRICT COURT
FOR THE EASTEN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONLAN TIRE CO., LLC,                                    Case No. 25-cv-10701

      Plaintiff/Counter-Defendant,                    Hon. Shalina D. Kumar

v.                                                                            Magistrate Judge Anthony P. Patti

ALEC "A.J." GONZALES,

      Defendant/Counter-Plaintiff

---

### ALEC GONZALES' ANSWER TO VERIFIED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTER-CLAIM AND RELANCE ON JURY DEMAND

---

### ANSWER

Alec Gonzales, by and through his undersigned counsel, and in answer to Plaintiff Conlan Tire Co., LLC's Verified Complaint, states as follows:

1.     This action arises out of Defendant's breach of the Confidentiality and Non-Solicitation Agreement he entered into with Conlan, during his tenure as a sales representative for the company in the Dallas/Fort Worth area.

**Answer:**     Defendant/Counter-Plaintiff denies the allegations of this paragraph. More specifically, Defendant/Counter-Plaintiff denies entering into the alleged "Agreement".

2.     Under his Agreement, Defendant agreed to three restrictions both during and after his employment with Conlan: (1) he would not use or disclose any confidential

information, (2) for 24 months, he would not solicit business from, accept business from, or otherwise interfere with Conlan's customers—limited narrowly to only those customers with whom he had direct contact, and (3) for 24 months, he would not solicit employment from, hire, or offer employment to any Conlan employee. Importantly, the Agreement did permit Defendant to work in the industry and for Conlan's competitors—he was simply required to avoid contact with his former customers for the specified period. Despite these narrow, enforceable, and clear restrictions, Defendant immediately and systematically breached all three obligations upon his separation from Conlan, flagrantly violating each substantive provision of the Agreement he had signed.

**Answer:**      Defendant/Counter-Plaintiff denies the allegations of this paragraph. More specifically, Defendant/Counter-Plaintiff denies entering into the alleged "Agreement".

3.      After being terminated from his employment with Conlan, Defendant immediately accepted employment with one of Conlan's largest competitors, Snider Fleet Solutions, operating as a competing sales representative for Snider, in the same geographic region in which he had previously operated for Conlan. Immediately after joining Snider, Defendant began soliciting Conlan customers with whom he had previous relationships, soliciting Conlan employees who he knew were favored by Conlan customers to join him at Snider, and using Conlan's confidential information to try and convert Conlan's business to his new employer Snider.

**Answer:**     Defendant/Counter-Plaintiff admits he was terminated from Conlan and admits accepting employment with Snider in a sales representative role, in the general geographic region.  Defendant/Counter-Plaintiff denies soliciting Conlan employees and denies using any confidential information of Conlan's as alleged. Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

4.     Each of these acts has imposed, and will continue to impose, irreparable harm to Conlan's goodwill and relationships with its customer base. Thus, Conlan seeks a temporary restraining order, preliminary and permanent injunctive relief, money damages, and attorneys' fees and costs, along with any further relief the Court deems necessary.

**Answer:**     Defendant/Counter-Plaintiff denies the allegations of this paragraph and denies Plaintiff/Counter-Defendant is entitled to the relief requested.

## Jurisdiction and Parties

5.     Conlan is a Michigan limited liability corporation, with its principal place of business located in Warren, Michigan, and a registered agent located in Warren, Michigan. Conlan, which merged with Great Lakes and Treading Co, LLC, in 2018, is a seller and servicer of commercial tires and related products, as well as a manufacturer of retreaded commercial truck tires, with numerous offices in Michigan, Ohio, Illinois, Missouri, Arkansas, Texas, and Florida. Conlan's sole member is Sidewall Holdings,

LLC. Sidewall Holdings is a Michigan limited liability company, with its headquarters in Michigan. Sidewall Holdings has two members: (1) 2020 AAM Trust, a Michigan trust with Michigan citizen Matthew T. Moroun as the sole trustee, and (2) Alex Conlan, a citizen of Florida. Thus, all members of Conlan are citizens of Michigan and Florida.

**Answer:**     Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

6.     Upon information Defendant provided to Conlan during his employment, Defendant resides in Dallas, Texas. Defendant was previously employed by Conlan as an Account Executive, working out of Plaintiff's offices in Dallas and Fort Worth, Texas from July 18, 2022, until his termination on December 30, 2024.

**Answer:**     Admitted.

7.     This Court has subject matter jurisdiction in this case under 28 U.S.C. § 1332, because Defendant is a citizen of a different state (Texas) than Conlan (Michigan and Florida) and the amount in controversy exceeds $75,000.00.

**Answer:**     The allegations of this paragraph are legal assertions to which no response is required

8.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b), and the parties' Agreement.

**Answer:**     The allegations of this paragraph are legal assertions to which no response is required.

**General Allegations**

**A.    Conlan's business practices**

9.    Conlan operates in numerous States across the country "Retreading America"—i.e., providing exceptional commercial tire services, including tire sales, tire retreading, and tire-repair servicing for commercial trucks all across the United States. Conlan's business model is based upon deep and committed customer relationships, ensuring that they always put quality and customer satisfaction above profits.

**Answer:**    Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

10.    Account Executives at Conlan occupy a largely public facing sales role, tasked with developing and maintaining relationships with customers who need to purchase and repair commercial grade truck tires. To that end, Account Executives are required to make initial calls to trucking companies, identify purchasing decisionmakers/fleet managers and the like, understand the customer's needs, negotiate on pricing, and build and maintain longstanding relationships with these decisionmakers.

**Answer:**    Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

11.    In order to build these relationships and develop good will, Conlan provides Account Executives an expense account to pay for lunches and gifts for customers. It

is not uncommon for an Account Executive to learn a customer's favorite drink or hobbies, and, for example, to act on that information by bringing a bottle of whiskey to the customer's offices or taking the fleet manager for their favorite lunch.

**Answer:** Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

12. Although Conlan would occasionally provide its Account Executives with sales leads, Conlan primarily compensates its Account Executives, while also providing commissions and covering expenses, to go out and land additional customers and accounts for Conlan.

**Answer:** Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

**B. Defendant's employment with Conlan and the parties' Confidentiality and Non-Solicitation Agreement**

13. Defendant began working for Conlan on July 18, 2022, and was employed as an Account Executive in the Dallas and Fort Worth, Texas area.

**Answer:** Defendant/Counter-Plaintiff admits being employed as an Account "Representative" (not "Executive") in the Dallas and Fort Worth, Texas area, but does not recall his specific start date and therefore leaves Plaintiff/Counter-Defendant to its proofs.

14. As a result of his employment, Defendant had access to Conlan's confidential

information, good will, and crucially important business and customer relationships.

**Answer:**     Defendant/Counter-Plaintiff denies having access to any confidential information or good will as alleged.  Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

15.     Conlan provided Defendant access to, and Defendant helped develop for Conlan, proprietary and competitively sensitive business information including (but not limited to) information regarding the particular needs of Conlan's customers, each customer's unique preferences, customer purchasing history, the terms of customers' business relationships with Conlan, pricing strategies, marketing plans and strategies, the identity of and plans for specifically targeted prospective customers, and certain non-public financial records.

**Answer:**     Defendant/Counter-Plaintiff denies the allegations of this paragraph as alleged.

16.     Defendant, as part of his employment with Conlan, was also privy to certain Conlan confidential and trade secret information, including customer lists, extensive customer information, pricing information, business plans and profits, profit margins, and product information.

**Answer:**     Defendant/Counter-Plaintiff denies the allegations of this paragraph as alleged.

17.     Consistent with his job description, Defendant was paid by Conlan to develop

several close relationships with owners and purchasing leaders of customers in the Dallas/Fort Worth area.

**Answer:**     Defendant/Counter-Plaintiff denies the allegations of this paragraph as alleged.

18.     In order to protect their competitively sensitive and proprietary information, good will, customer relationships, and other protectable interests in this highly competitive industry, it is common practice for employers to utilize restrictive covenants. Conlan requires its Account Executives, including Defendant, to sign a relatively narrow and pointed Confidentiality and Non-Solicitation Agreement, to protect its highly valuable confidential information and customer relationships. *See* Ex. 1.

**Answer:**     Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.  By way of further response, Defendant/Counter-Plaintiff denies signing the "Agreement" as alleged.

19.     Defendant's Agreement, which explicitly notes that Defendant entered into it "[i]n consideration of [his] employment . . . by the Company, the Company providing [him] with access to Confidential Information, and for other good and valuable consideration," Ex. 1, p. 1, has several provisions relevant here.

**Answer:**     Defendant/Counter-Plaintiff denies having such an "Agreement" with Plaintiff/Counter-Defendant and therefore denies the allegations of this paragraph.

- 8 -

20.   *First*, Defendant agreed to keep all of Conlan's nonpublic, proprietary information confidential.  Ex. 1, § 2.

**Answer:**   Defendant/Counter-Plaintiff denies having such an "Agreement" with Plaintiff/Counter-Defendant and therefore denies the allegations of this paragraph.

21.   In particular, Defendant agreed that all confidential information—defined as including all nonpublic "information that concerns the business affairs of the Company or its customers, clients, or accounts, including but not limited to: customer and customer prospects lists, call lists and all other customer data; product and service pricing; . . . and logistics in the way of routing, rating and pricing"—"is and shall remain the exclusive property of" Conlan.  Ex. 1, § 2.A.

**Answer:**   Defendant/Counter-Plaintiff denies having such an "Agreement" with Plaintiff/Counter-Defendant and therefore denies the allegations of this paragraph

22.   This Confidentiality Provisions also prohibits Defendant from "us[ing]" confidential information "for the direct or indirect benefit of, any person or entity other than" Conlan.  Ex. 1, § 2.C.

**Answer:**   Defendant/Counter-Plaintiff denies having such an "Agreement" with Plaintiff/Counter-Defendant and therefore denies the allegations of this paragraph.

23.   *Second*, Defendant agreed to a narrow non-solicitation clause that prevented him, for 24 months after leaving Conlan's employ, from soliciting or accepting business from Conlan's clients that he had an ongoing, direct relationship with.

**Answer:**   Defendant/Counter-Plaintiff denies having such an "Agreement" with

Plaintiff/Counter-Defendant and therefore denies the allegations of this paragraph.

24.     More specifically, Defendant agreed "that, during his/her employment, and for a period of twenty-four (24) months after his/her employment has terminated, for any reason, he/she will not, either solely or jointly with, or as manager or agent for, any person, corporation, trust, joint venture, partnership, or other business entity, directly or indirectly, approach or solicit for business, accept business from, divert business from, or otherwise interfere with any Company relationship with, any person or entity (or legal successor to such person or entity) that Employee had any direct contact with while employed by the Company and that: (a) has been a customer of the Company at anytime within the six (6) month period prior to Employee's termination; or (b) to whom the Company had made a proposal within the six (6) month period prior to Employee's termination." Ex. 1, § 3.

**Answer:**     Defendant/Counter-Plaintiff denies having such an "Agreement" with Plaintiff/Counter-Defendant and therefore denies the allegations of this paragraph.

25.     *Third*, Defendant also agreed not to solicit any personnel of Conlan during his employment and for 24 months after leaving Conlan's employ.

**Answer:**     Defendant/Counter-Plaintiff denies having such an "Agreement" with Plaintiff/Counter-Defendant and therefore denies the allegations of this paragraph.

26.     To wit, Defendant agreed "that, during his/her employment, and for a period of twenty-four (24) months after his/her employment has terminated, for any reason, Employee will not, directly or indirectly, solicit for employment, hire, or offer

employment to, or otherwise aid or assist any person or entity other than the Company, in soliciting for employment, hiring, or offering employment to: (a) any employee of the Company or any independent contractor engaged by the Company; or (b) any former employee or independent contractor of the Company who was employed, or engaged, by the Company within six (6) months before or after the cessation of Employee's employment." Ex. 1, § 4.

**Answer:**   Defendant/Counter-Plaintiff denies having such an "Agreement" with Plaintiff/Counter-Defendant and therefore denies the allegations of this paragraph.

27.   Defendant also acknowledged that "any breach of this Agreement is likely to result in irreparable injury to the Company, and agrees that the Company shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either in law or in equity, to obtain damages for any breach of this Agreement, to enforce the specific performance by [Defendant] of this Agreement, and/or to enjoin [Defendant] from activities in violation of this Agreement," with jurisdiction proper in Macomb County Circuit Court or the U.S. District Court for the Eastern District of Michigan, and all disputes are to be governed by Michigan law.  Ex. 1, § 7.A–C.

**Answer:**   Defendant/Counter-Plaintiff denies having such an "Agreement" with Plaintiff/Counter-Defendant and therefore denies the allegations of this paragraph.

28.   The Agreement also noted that if Defendant did not "fully compl[y] with" the customer and personnel non-solicitation provision in §§ 3 and 4 of the Agreement,

Conlan reserved the right to have "the period of the restriction(s) . . . be extended to commence with the full compliance by [Defendant], and to run fully thereafter, reduced only by the length of time between the cessation of [Defendant]'s employment and his/her first violation of Section 3 or 4." Ex. 1, § 7.E.

**Answer:** Defendant/Counter-Plaintiff denies having such an "Agreement" with Plaintiff/Counter-Defendant and therefore denies the allegations of this paragraph.

29. Defendant signed this Agreement on July 13, 2022, five days before commencing his role as Account Executive with Conlan. Ex. 1, p. 3.

**Answer:** Denied.

30. The parties' Agreement and the incorporated non-compete and non- solicit provisions within are fully compliant with Michigan law, MCL 455.774a, and the confidentiality provision is similarly lawful and consistent with Michigan public policy, as these narrowly drawn provisions are all related to Conlan's legitimate and competitive business interests, and reasonable as to duration, geographic area, and scope.

**Answer:** Defendant/Counter-Plaintiff denies having such an "Agreement" with Plaintiff/Counter-Defendant and therefore denies the allegations of this paragraph.

### C. Defendant's brazen solicitations of Conlan customers and employees, and improper use of confidential information

31. On December 30, 2024, Conlan terminated Defendant's employment following Defendant's receipt of a criminal citation for unlawfully driving under the influence in a company vehicle.

**Answer:** Defendant/Counter-Plaintiff admits only that Conlan terminated his

employment but denies receiving a criminal citation as alleged.

32.    The following day, On December 31, 2024, the remainder of the sales team in the Fort Worth area attended a meeting when Conlan informed them of Defendant's termination from employment. At the meeting, Conlan instructed the remaining Account Executives to quickly begin meeting face-to-face with all of Conlan's customers for whom Defendant served as Account Executive, in order to maintain those relationships and, hopefully, retain all prior business.

**Answer:**    Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

33.    Shortly thereafter, Defendant accepted a job in sales for Snider Fleet Solutions, one of Conlan's main competitors.

**Answer:**    Defendant/Counter-Plaintiff admits accepting a job in sales for Snider. Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

34.    Almost immediately, he began systematically and intentionally breaching the Confidentiality and Non-Solicitation Agreement.

**Answer:**    Defendant/Counter-Plaintiff denies having such an "Agreement" with Plaintiff/Counter-Defendant and therefore denies the allegations of this paragraph

35.    Indeed, Conlan has direct evidence that Defendant improperly used its

confidential information, solicited and unfairly converted customers, attempted to solicit and unfairly convert other customers, and successfully solicited at least two Conlan employees to join him at Snider Fleet Solutions.

36.    For example, based upon Conlan's first-hand knowledge, Defendant successfully solicited and convinced the following customers—all of whom Conlan paid Defendant to develop and service for Conlan's business—to convert all or part of their business to Snider:

      a.   Freedom Trans Dedicated;

      b.   QW Transport;

      c.   Big D Concrete;

      d.   Redbull McKinney;

      e.   GTO Transportation;

      f.   England Products;

      g.   Superior Pipeline Yard; and

      h.   Taxco

**Answer:**    Defendant/Counter-Plaintiff admits soliciting customers which Defendant/Counter-Plaintiff called on while employed by Plaintiff/Counter-Defendant. Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

37.    In addition, Defendant solicited, albeit unsuccessfully, numerous other

customers of Conlan for which he was paid to develop and service for Conlan's business, and many of whom informed Conlan representatives of Defendant's unlawful attempts to take their business to Snider:

    a.  10 Services;

    b.  Quirch Foods;

    c.  TA Services;

    d.  American Materials;

    e.  Matheson Tri Gas;

    f.  NG Concrete;

    g.  3G Express;

    h.  Metropolitan Gunnite;

    i.  Carvana; and

    j.  Cowtown Materials.

**Answer:**    Defendant/Counter-Plaintiff admits soliciting customers which Defendant/Counter-Plaintiff called on while employed by Plaintiff/Counter-Defendant. Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

38.    As a result of Defendant's unlawful actions, Conlan has suffered, and will continue to suffer, significant losses of revenue.

**Answer:**    Defendant/Counter-Plaintiff denies engaging in unlawful actions or that

Conlan has suffered or will suffer as alleged.

39.     Although showing a direct relationship between Defendant's unlawful actions and Conlan's damages is inherently difficult in this context, there is already circumstantial evidence that Defendant's solicitation of Conlan's customers has caused significant and growing damages. Comparing revenues from Conlan customers in the Dallas/Fort Worth area for whom Conlan paid Defendant to develop and service shows substantial decrease in Conlan's revenues.

**Answer:**     Defendant/Counter-Plaintiff denies engaging in unlawful actions or that Conlan has suffered or will suffer as alleged.  Defendant/Counter-Plaintiff denies any remaining allegations of this paragraph.

40.     These harms will continue to grow if Defendant is permitted to continue his unlawful course of conduct. After all, Conlan paid Defendant to manage and service accounts that brought in over $1,000,000 in annual revenue to Conlan.

**Answer:**     Defendant/Counter-Plaintiff denies engaging in unlawful actions or that Conlan has suffered or will suffer as alleged.  Defendant/Counter-Plaintiff denies any remaining allegations of this paragraph.

41.     Beyond Defendant misappropriating customers, he has also begun poaching Conlan's employees whom he knew only through his prior employment with Conlan.

**Answer:**     Denied.

42.     Jose Vigil was an Technician with Conlan from October 16, 2024, until January 30, 2025.

**Answer:** Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

43. A Conlan Account Executive ran into Mr. Vigil at another Conlan customer sometime in January. Mr. Vigil specifically told Mr. Hasenak that he went to Snider because Defendant convinced him to do so.

**Answer:** Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

44. Additionally, an Off the Road Mobile Technician who specialized in heavy-duty equipment named Andy Marmelejo also followed Defendant to Snider, after Defendant's urging.

**Answer:** Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

45. As Defendant was well aware from his work for Conlan, technicians like Mr. Vigil and Mr. Marmelejo are specially trained, well compensated for their expertise, and an important part of sales pitches to obtain and retain customers.

**Answer:** Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

46.     Defendant targeted Mr. Vigil and Mr. Marmelejo for the express purpose of meeting Conlan customer preferences and having a better chance of unfairly flipping those customers to Snider—again utilizing unique, competitively sensitive knowledge about customers he knew only by virtue of his employment at Conlan.

**Answer:**     Defendant/Counter-Plaintiff denies 'targeting' anyone as alleged, and denies the remaining allegations of this paragraph.

47.     Thus, Defendant's previous and ongoing poaching of Conlan's highly skilled employees also results in significant harm and damages to Conlan.

**Answer:**     Defendant/Counter-Plaintiff denies "poaching" anyone and denies the remaining allegations of this paragraph.

48.     Defendant's current employer, Snider, agrees with Conlan regarding the importance of protecting its customer relationships, good will, and competitively sensitive proprietary information.

**Answer:**     Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

49.     Snider requires its sales employees to sign even broader restrictive covenant agreements that require its former sales employees to completely sit out of the industry in a geographic area for a time following their separation from Snider.

**Answer:**     Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves

Plaintiff/Counter-Defendant to its proofs.

50.     Snider also has a pattern and practice of filing lawsuits against former sales employees to enforce a full non-compete clause. In a previous lawsuit challenging the employment of a former sales colleague of Defendant, Snider explicitly admitted that it needed to protect "its proprietary business information including (but not limited to) information regarding the particular needs of Snider's customers, customer purchasing history, the terms of customers' business relationships with Snider, pricing strategies, Snider's marketing plans and strategies, the identity of and plans for specifically targeted prospective customers, and Snider's non-public financial records"—i.e., the same protectable interests that Conlan seeks to protect in this lawsuit.

**Answer:**     Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

51.     Snider also admitted in that lawsuit that a former sales employee's breach of a non-compete agreement and confidentiality agreement "have caused and threaten to continue to cause harm to Snider by way of loss of customers, loss [of] profits, loss of confidential information, and loss of goodwill."

**Answer:**     Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

52.     Again, Snider sees these risks as such a significant threat to their business, that

they actually impose a complete non-compete on their employees—unlike the significantly more limited non-solicitation provisions in the parties' Agreement— prohibiting them from working for any individual or business that competes with Snider for a whole year following the end of their employment.

**Answer:** Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

53. As with the harm caused to Snider, Defendant's breaches of the Agreement's non-solicit and confidentiality clauses cause Conlan grave, irreparable harms.

**Answer:** Defendant/Counter-Plaintiff denies breaching any alleged agreement, denies Conlan has been harmed as alleged, and denies the remaining allegations of this paragraph.

54. In addition, Conlan has incurred substantial and growing attorney fees and costs due to Defendant's numerous breaches of the Agreement, which it is entitled to collect under the Agreement.

**Answer:** Defendant/Counter-Plaintiff denies breaching any alleged agreement, denies Conlan has been harmed as alleged, and denies the remaining allegations of his paragraph.

### D. Procedural background

55. On January 29, 2025, after becoming initially aware of Defendant's flagrant breaches of the parties' Agreement, counsel for Conlan sent Defendant a cease- and-

desist letter.

**Answer:**     Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

56.     This letter reiterated to Defendant his obligations under the parties' Agreement, specifically noting that the Agreement prohibited Defendant "from soliciting Conlan's current employees or customers for a period of 24 months after your employment with Conlan ends," while also noting that Defendant "giving [his] current employer information that it can use to solicit current Conlan employees or customers" would constitute "a breach of contract as well."

**Answer:**     Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

57.     Counsel for Snider, but not Defendant, responded in a letter dated February 18, 2025. But this responsive letter merely requested a copy of the parties' Agreement (despite the fact that Defendant was required to provide Snider a copy of the Agreement per its terms, Ex. 1, § 6), and did not acknowledge Defendant's obvious violations of the Agreement.

**Answer:**     Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

58.     Thereafter, Defendant failed to comply with Conlan's demands, forcing Conlan to proceed with this lawsuit in order to enforce its rights and obtain the benefit of the bargain the parties agreed to in the Agreement.

**Answer:**     Defendant/Counter-Plaintiff denies having an "Agreement" with Plaintiff/Counter-Defendant as alleged.  Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

### COUNT I – BREACH OF PRESERVATION OF CONFIDENTIAL INFORMATION PROVISION OF CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

59.     Conlan restates the allegations in all prior paragraphs as if fully set forth herein.

**Answer:**     Defendant/Counter-Plaintiff incorporates by reference the admissions, denials, answers and defenses set forth in response to the prior paragraphs.

60.     The parties' Agreement is a valid and binding contract supported by valuable consideration.

**Answer:**     Defendant/Counter-Plaintiff denies having an "Agreement" with Plaintiff/Counter-Defendant as alleged and denies the remaining allegations of this paragraph.

61.     Defendant's actions are in direct violation of the Agreement.

**Answer:**     Defendant/Counter-Plaintiff denies having an "Agreement" with Plaintiff/Counter-Defendant as alleged and denies the remaining allegations of this paragraph.

62.     By signing the Agreement, Defendant expressly agreed not to "directly or indirectly, disclose, communicate, or divulge [Confidential Information] to, or use the same for the direct or indirect benefit of, any person or entity other than [Conlan]. Employee further agrees to take all reasonable precautions to protect from loss or disclosure all Confidential Information supplied to him/her by [Conlan] or its customers, clients, or accounts." Ex. 1, § 2.C.

**Answer:**     Defendant/Counter-Plaintiff denies having an "Agreement" with Plaintiff/Counter-Defendant as alleged and denies the remaining allegations of this paragraph.

63.     Furthermore, the Agreement defines "Confidential Information" as including, among other things, "any and all information that concerns the business affairs of the Company or its customers, clients, or accounts, including but not limited to: customer and customer prospects lists, call lists and all other customer data," as well as "logistics in the way of routing, rating and pricing." Ex. 1, § 2.A.

**Answer:**     Defendant/Counter-Plaintiff denies having an "Agreement" with Plaintiff/Counter-Defendant as alleged and denies the remaining allegations of this paragraph.

64.     This confidentiality provision is enforceable because Michigan law and public policy do not prohibit such confidentiality requirements between employers and employees, and so an employer can bind an employee by promise not to use, disclose, or otherwise disseminate confidential information without the employer's permission.

**Answer:**     Defendant/Counter-Plaintiff denies having an "Agreement" with Plaintiff/Counter-Defendant as alleged and denies the remaining allegations of this paragraph which are not legal assertions.  No response is required to the legal assertions.

65.     In violation of this non-disclosure provision, Defendant solicited numerous of Conlan's customers on behalf of his new employer, Snider, without first obtaining the written consent of Conlan to use its "customer and customer prospects lists" list or its "pricing" information.  Ex. 1, § 2.A.

**Answer:**     Defendant/Counter-Plaintiff denies having an "Agreement" with Plaintiff/Counter-Defendant as alleged and therefore denies the remaining allegations of this paragraph.

66.     The information that Defendant accessed while employed by Snider is confidential and of great economic value to Conlan's competitors, including Snider.

**Answer:**     Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

67.     Furthermore, Defendant's unlawful use of that confidential information directly supported Defendant's other breaches of the Agreement, resulting in significant lost revenue and business relationships.

**Answer:**     Defendant/Counter-Plaintiff denies any allegations of unlawful use of any information, and denies any other "breaches" as alleged, and denies being party to the alleged "Agreement".   Defendant /Counter-Plaintiff further denies any allegations of

damage.

68.     As a direct and proximate result of Defendant's violations of the Agreement, Conlan has suffered and will continue to suffer damages in the form of lost business and lost profits and will incur costs and attorney fees in prosecuting this action, which together will exceed $75,000.00.

**Answer:**     Denied.

69.     And, as a direct and proximate result of Defendant's violations of the Agreement, Conlan is suffering irreparable injury, including the loss of the goodwill of its customers, a weakened ability to fairly compete with its competitors, and disclosure of confidential information that Conlan has obtained and/or generated at great expense.

**Answer:**     Denied.

### COUNT II – BREACH OF COVENANT NOT TO SOLICIT CLIENTS, CUSTOMERS, OR ACCOUNTS WITH WHOM EMPLOYEE HAD DIRECT CONTACT, WITHIN CONFIDENTIALITY AND NON-SOLICATION AGREEMENT

70.     Conlan restates the allegations in all prior paragraphs as if fully set forth herein.

**Answer:**     Defendant/Counter-Plaintiff incorporates by reference the admissions, denials, answers and defenses set forth in response to the prior paragraphs.

71.     The parties' Agreement is a valid and binding contract supported by valuable consideration.

**Answer:**     Defendant/Counter-Plaintiff denies the "Agreement" and denies the remaining allegations of this paragraph.

72.     Defendant's actions are in direct violation of the Agreement.

**Answer:** Defendant/Counter-Plaintiff denies the "Agreement" and denies the remaining allegations of this paragraph.

73.     By signing the Agreement, Defendant expressly agreed not to "either solely or jointly with, or as manager or agent for, any person, corporation, trust, joint venture, partnership, or other business entity, directly or indirectly, approach or solicit for business, accept business from, divert business from, or otherwise interfere with any [Conlan] relationship with, any person or entity (or legal successor to such person or entity) that [Defendant] had any direct contact with while employed by [Conlan] and that: (a) has been a customer of [Conlan] at anytime within the six (6) month period prior to [Defendant's] termination; or (b) to whom [Conlan] had made a proposal within the six (6) month period prior to [Defendant's] termination," for his entire employment and 24 months thereafter. Ex. 1, § 3.

**Answer:** Defendant/Counter-Plaintiff denies the "Agreement" and denies the remaining allegations of this paragraph.

74.     This non-compete and non-solicitation provision within the Agreement is enforceable because it is reasonably drawn in terms of duration, geographical scope, and line of business and it protects Conlan's legitimate business interests, as evidenced by the fact that it only requires Defendant to refrain from soliciting or accepting business from *actual clients* of Conlan that Defendant had *actually interacted with* in his employment with Conlan.

**Answer:** Defendant/Counter-Plaintiff denies the "Agreement" and denies the

remaining allegations of this paragraph, including that the "Agreement" is enforceable as alleged.

75.     In violation of the non-compete and non-solicitation provision of the Agreement, Defendant made numerous, intentional contacts with existing Conlan customers in attempts to obtain their business and bring it with him to Snider.

**Answer:**     Defendant/Counter-Plaintiff denies the "Agreement" and denies any alleged violation of same. Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

76.     On several occasions, Defendant was successful in doing so and actually pilfered Conlan's clients and business.

**Answer:**     Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

77.     But, in any event, each and every of Defendant's contacts with Conlan customers constitutes a breach of this provision, and entitles Conlan to its damages and attorney fees and costs.

**Answer:**     Defendant/Counter-Plaintiff denies the "Agreement" and denies any alleged violation of same. Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

78.    As a direct and proximate result of Defendant's violations of the Agreement, Conlan has suffered and will continue to suffer damages in the form of lost business and lost profits and will incur costs and attorney fees in prosecuting this action, which together will exceed $75,000.00.

**Answer:**    Defendant/Counter-Plaintiff denies the "Agreement" and denies any alleged violation of same. Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs

79.    As a direct and proximate result of Defendant's violations of the Agreement, Conlan is suffering irreparable injury, including the loss of the goodwill of its customers, a weakened ability to fairly compete, and the disclosure of confidential information that Conlan has obtained and/or generated at great expense.

**Answer:**    Defendant/Counter-Plaintiff denies the "Agreement" and denies any alleged violation of same. Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs

80.    Because certain of Conlan's damages may be unquantifiable and cause irreparable harm, and, in light of Defendant's affirmative and intentional choice to ignore his obligations to Conlan, Conlan is also entitled to an extension of the restrictive covenants within the Agreement, under *Thermatool Corp.*, 227 Mich. App. 366, as well as an injunction restraining Defendant from violating the Agreement.

**Answer:**     Defendant/Counter-Plaintiff denies the "Agreement" and denies any obligations as alleged and denies Plaintiff/Counter-Defendant has been damaged or is entitled to the relief requested.

### COUNT III – BREACH OF COVENANT NOT TO SOLICIT PERSONNEL WITHIN CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

81.     Conlan restates the allegations in all prior paragraphs as if fully set forth herein.

**Answer:**     Defendant/Counter-Plaintiff incorporates by reference the admissions, denials, answers and defenses set forth in response to the prior paragraphs.

82.     The parties' Agreement is a valid and binding contract supported by valuable consideration.

**Answer:**     Denied.

83.     Defendant's actions are in direct violation of the Agreement.

**Answer:**     Denied.

84.     By signing the Agreement, Defendant expressly agreed not to "directly or indirectly, solicit for employment, hire, or offer employment to, or otherwise aid or assist any person or entity other than [Conlan], in soliciting for employment, hiring, or offering employment to: (a) any employee of [Conlan] or any independent contractor engaged by [Conlan]; or (b) any former employee or independent contractor of [Conlan] who was employed, or engaged, by [Conlan] within six (6) months before or after the cessation of [Defendant's] employment," for his entire employment and 24 months thereafter. Ex. 1, § 4.

**Answer:**     Defendant/Counter-Plaintiff denies signing the alleged "Agreement" and therefore denies the allegations of this paragraph.

85.   This non-solicitation of employees provision within the Agreement is enforceable because it is reasonably drawn in terms of duration, geographical scope, and line of business and it protects Conlan's legitimate business interests in retaining its talent in whom it had invested significant money and effort to train, as evidenced by the fact that it only requires Defendant to refrain from soliciting or accepting business from *actual employees* and *former employees* who had been employed within six months of Defendant's termination of employment.

**Answer:**     Defendant/Counter-Plaintiff denies being a party to the alleged "Agreement" and therefore denies the allegations of this paragraph. Defendant/Counter-Plaintiff further denies the "Agreement" is enforceable as alleged.

86.   In violation of the non-solicitation of employees provision in the Agreement, Defendant has, on at least two occasions, successfully convinced Conlan employees to leave their employment and join Defendant at Snider.

**Answer:**     Defendant/Counter-Plaintiff denies being a party to the alleged "Agreement" and therefore denies liability as alleged.  Defendant/Counter-Plaintiff further denies "convincing" Conlan employees to leave their employment and join Defendant at Snider.

87.   These employees were Technicians named Jose Vigil and Andy Marmelejo,  both specially  trained,  well  compensated  for  their  expertise,  and  an

important part of sales pitches to obtain and retain customers, creating significant harm to Conlan from Defendant's poaching of these employees.

**Answer:** Defendant/Counter-Plaintiff denies being a party to the alleged "Agreement" and therefore denies liability as alleged. Defendant/Counter-Plaintiff lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph, and therefore denies the same and leaves Plaintiff/Counter-Defendant to its proofs.

88.    As a direct and proximate result of Defendant's violations of the Agreement, Conlan has suffered and will continue to suffer damages in the form of lost business and lost profits and will incur costs and attorney fees in prosecuting this action, which together will exceed $75,000.00.

**Answer:** Denied.

89.    As a direct and proximate result of Defendant's violations of the Agreement, Conlan is suffering irreparable injury, including the loss of the goodwill of its customers, a weakened ability to fairly compete, and the disclosure of confidential information that Conlan has obtained and/or generated at great expense.

**Answer:** Denied.

90.    Because certain of Conlan's damages may be unquantifiable and cause irreparable harm, and, in light of Defendant's affirmative and intentional choice to ignore his obligations to Conlan, Conlan is also entitled to an extension of the restrictive covenants within the Agreement, under *Thermatool Corp.*, 227 Mich. App. 366, as well as an

injunction restraining Defendant from violating the Agreement.

**Answer:**    Defendant/Counter-Plaintiff denies the "Agreement" and denies any obligations as alleged and denies Plaintiff/Counter-Defendant has been damaged or is entitled to the relief requested.

## Answer to Relief Requested

Defendant/Counter-Plaintiff denies the allegations made and relief sought and denies that Plaintiff/Counter-Defendant is entitled to any relief requested.

WHEREFORE, having answered the allegations of the Verified Complaint, Defendant/Counter-Plaintiff requests that this Court dismiss Plaintiff/Counter-Defendant's claims in the Verified Complaint with prejudice and order Plaintiff/Counter-Defendant to pay reasonable attorneys' fees and such other costs or relief as this Court may deem appropriate.

Respectfully submitted,

By: /s/ Zachary B. Mack
Zachary B. Mack (P62742)
Salvatore Prescott Porter & Porter, PLLC (Of Counsel)
Attorney for Alec Gonzales
105 East Main Street
Northville, Michigan 48167
(248) 679-8711
mack@spplaw.com

Dated:      May 5, 2025

## AFFIRMATIVE DEFENSES

Alec Gonzales, by and through his undersigned attorney, submits the following affirmative defenses:

1.      Plaintiff/Counter-Defendant's claims and/or the relief requested are barred in whole or in part because there is no reasonable, enforceable contract between the parties that forms the basis of the allegations contained in the Verified Complaint.

2.      Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, because Plaintiff/Counter-Defendant has not suffered damages as alleged.

3.      Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, because Plaintiff/Counter-Defendant cannot demonstrate irreparable harm.

4.      Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, because any alleged restrictive covenant relied upon by Plaintiff/Counter-Defendant is/are unreasonable and/or prohibited by law.

5.      Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, because Defendant/Counter-Plaintiff's actions were based solely upon legitimate business reasons.

6.      Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, by Plaintiff/Counter-Defendant's own acts of omission and/or commission.

7.      Plaintiff/Counter-Defendant fails to state a claim upon which relief can be granted as a matter of fact and/or law.

8.      Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, by the doctrine of first breach.

9.      Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, because Plaintiff/Counter-Defendant lacks standing to assert its claims, including but not limited to, its claim for injunctive relief.

10.     Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, because Plaintiff/Counter-Defendant has not suffered, nor will it suffer in the future, any damages proximately caused by any actions of the Defendant/Counter-Plaintiff.

11.     Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, because Plaintiff/Counter-Defendant has not been unfairly harmed.

12.     Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, because Plaintiff/Counter-Defendant failed to mitigate its damages, entitlement to which is expressly denied.

13.     Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, because Defendant/Counter-Plaintiff has, at all relevant times herein, never breached his duties or any contract.

14.     Plaintiff/Counter-Defendant's claim for attorney's fees is barred because Defendant/Counter-Plaintiff has, at all relevant times herein, acted properly and in

good faith.

15.     Plaintiff/Counter-Defendant is not entitled to injunctive relief because principles of equity and justice do not support such extraordinary relief in this case.

16.     Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, by the equitable doctrine of laches, waiver, estoppel, release and/or consent.

17.     Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, by the doctrine of unclean hands.

18.     Plaintiff/Counter-Defendant's claims and/or the relief requested are barred, in whole or in part, by a failure of consideration.

19.     Defendant/Counter-Plaintiff reserves the right to assert additional defenses as may be appropriate based on continuing investigation and discovery.

        WHEREFORE, Alec Gonzales respectfully requests that this Court dismiss Plaintiff/Counter-Defendant's Verified Complaint with prejudice and order Plaintiff/Counter-Defendant to pay reasonable attorneys' fees and such other costs or relief as this Court may deem appropriate.

Respectfully submitted,

By: /s/Zachary B. Mack
Zachary B. Mack (P62742)
Salvatore Prescott Porter & Porter,
PLLC (Of Counsel)
Attorney for Alec Gonzales
105 East Main Street
Northville, Michigan 48167
(248) 679-8711
mack@sppplaw.com

Dated: May 5, 2025

## COUNTERCLAIM

For his Counterclaim against Plaintiff/Counter-Defendant Conlan Tire Co.,

LLC ("Conlan"), Defendant/Counter-Plaintiff Alec Gonzales ("Gonzales"), by and

through his undersigned attorney, states as follows:

1.     Gonzales began working as an Account Representative for Conlan in or about
July of 2022.

2.     Gonzales was terminated in December of 2024.

3.     In consideration of Gonzales' services performed on behalf of Conlan, and

starting from the beginning of Gonzales' employment, the parties had an express

and/or implied agreement that Gonzales would receive a commission of 21% of

collected gross profit received from Gonzales' accounts he called on.

4.     The commissions were to be paid monthly, in an amount the commissions were

in excess of Gonzales' base salary.

5.     After starting employment, Conlan revised its commission policy for Account

Representatives, including Gonzales.  Instead of the straight 21% Conlan expressly

and/or impliedly agreed to pay Gonzales, Conlan changed to a commission of 21% of

the gross profit on sales revenue on "Standard Accounts" and 10.5% of the gross profit

on sales revenue on "Corporate Accounts".

## Count I – BREACH OF CONTRACT

6.     Gonzales repeats and re-alleges the above paragraphs.

7.     Conlan has breached its express and/or implied agreement with Gonzales by

- 37 -

failing and/or refusing to compensate Gonzales, in the form of the agreed upon commissions, on the collected gross profit on sales revenues from Gonzales' accounts.

8.      Conlan has breached its express and/or implied agreement with Gonzales by failing and/or refusing to compensate Gonzales 21% of the gross profit on sales revenues on Standard Accounts.

9.      Conlan has breached its express and/or implied agreement with Gonzales by failing and/or refusing to compensate Gonzales 10.5% of the gross profit on sales revenue on Corporate Accounts.

10.     As a result of Conlan's breaches of the parties' agreement, Gonzales has incurred substantial damages and will continue to suffer such damages in the future.

### Count II – PROCURING CAUSE DOCTRINE

11.     Gonzales repeats and re-alleges the above paragraphs.

12.     The Count is being made by way of alternative pleading.

13.     In the alternative, if no express agreement is found to have existed between the parties as to commissions to which Gonzales would be entitled to in the event of termination, Gonzales' entitlement to commissions is governed by the Procuring Cause Doctrine.

14.     Under the Procuring Cause Doctrine, Gonzales is entitled to a commission on gross profit on sales revenue on both Standard and Corporate Accounts collected from Gonzales' assigned accounts, because of Gonzales' efforts in procuring the sales prior to his termination.

## Count III – UNJUST ENRICHMENT

15.     Gonzales repeats and re-alleges the above paragraphs.

16.     This Count is being made by way of alternative pleading.

17.     Should a trier of fact determine that the parties did not reach a meeting of the minds concerning the commissions due to Gonzales, Gonzales is entitled to the commissions claimed under the doctrine of unjust enrichment, since otherwise Conlan would reap the benefits of Gonzales' services without proper compensation.


        WHERFORE, Gonzales demands judgment on his Counterclaim in his favor, and against Conlan, for an amount of commissions, damages, and/or compensation found due and owing to Gonzales.  Gonzales further requests an award of costs, interest, attorney fees, and/or whatever different or additional legal or equitable relief appears appropriate at the time of final judgment.

<div style="margin-left: 40%;">

Respectfully submitted,

By:/s/Zachary B. Mack
Zachary B. Mack (P62742)
Salvatore Prescott Porter & Porter,
PLLC (Of Counsel)
Attorney for Alec Gonzales
105 East Main Street
Northville, Michigan 48167
(248) 679-8711
mack@sppplaw.com

</div>

Dated: May 5, 2025

## **<u>RELIANCE ON JURY DEMAND</u>**

Alec Gonzales hereby relies upon the jury demand previously filed in this lawsuit by

Conlan Tire Co., LLC.


Respectfully submitted,

By:<u>/s/Zachary B. Mack</u>
Zachary B. Mack (P62742)
Salvatore Prescott Porter & Porter,
PLLC (Of Counsel)
Attorney for Alec Gonzales
105 East Main Street
Northville, Michigan 48167
(248) 679-8711
mack@spplaw.com

Dated: May 5, 2025

## PROOF OF SERVICE

The undersigned hereby certifies that the foregoing document was filed with the Court's electronic filing system on May 5, 2025, which will send notification and a copy of the filing to all attorneys of record.

/s/Zachary B. Mack

Zachary B. Mack (P62742)