UNITED STATES DISTRICT COURT
FOR THE EASTEN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONLAN TIRE CO., LLC,

        Plaintiff,

v.

ALEC "A.J." GONZALES,

        Defendant.

Case No. 25-cv-10701-SDK-APP

Hon. Shalina D. Kumar

Magistrate Judge Anthony P. Patti

**Plaintiff Conlan Tire's Motion for Sanctions Due to Spoliation of Evidence**

Under Federal Rule of Civil Procedure 37(e), Plaintiff Conlan Tire Co., LLC moves for sanctions against Defendant Alec "A.J." Gonzales, due to his willful spoliation of electronic evidence relevant to this case and, in particular, Conlan's preliminary injunction motion, for the following reasons:

1.     From the start of this breach-of-restrictive-covenant case, Defendant's sole defense has been his evolving claim that he did not sign the Non-Solicitation and Confidentiality Agreement. After the Court ordered forensic inspection of his devices, that inspection exposed the basis for his claims: while delaying production of his Yahoo account, Defendant consulted ChatGPT for instructions on how to permanently destroy the very emails that would show his defense was a sham so they would not be produced in response to a valid subpoena. (*See* Ex. 1, Defendant's ChatGPT Searches on Yahoo Email Deletion.)

2.     A review of Defendant's Yahoo account has shown that the relevant emails are no longer in his Yahoo account and, as promised by ChatGPT's answers to Defendant, Yahoo has confirmed anything deleted is now unrecoverable. Defendant thus has violated a previous preservation Order of this Court and Federal Rule of Civil Procedure 37(e)'s requirement that he preserve electronically stored information.

3.     In addition, the advice Defendant sought from ChatGPT about how to permanently destroy emails so they would not be recoverable when subpoenaed shows he "acted with the intent to deprive" Conlan's "use [of the emails] in the litigation,"

meriting a "presum[ption] that the lost [emails were] unfavorable to [him]." Fed. R. Civ. P. 37(e)(2)(A).

4.     Accordingly, Conlan seeks a finding that Defendant spoliated evidence, and sanctions in the form of: (a) a presumption that the evidence Defendant destroyed would have been unfavorable to him in that it showed he signed the Agreement, and (b) an award of reasonable fees and costs expended as a result of Defendant's intentional spoliation of evidence, including the costs of obtaining a forensic examination of Defendant's devices, engaging a handwriting expert, and the attorney's fees related to the discovery, delays, Court conferences, and litigation of the signature issue.

5.     In further support of its Motion, Conlan relies on the facts and authorities provided in the accompanying brief.

6.     As required by Local Rule 7.1(a), Conlan's counsel sought Defendant's concurrence in the relief requested by this motion, which was denied.

WHEREFORE, Conlan requests that the Court grant this Motion and enter sanctions against Defendant as follows:

(a)     Holding that Defendant deleted items within his Yahoo email account related to the valid subpoena this Court endorsed, thereby spoliating evidence relevant to this case;

(b)     Holding that Defendant did so intentionally, to deprive Conlan of the use of those email items in this litigation;

– 2 –

(c)     Adopting a presumption that the emails Defendant deleted were unfavorable to him, showing that he *did* sign the Non-Solicitation and Confidentiality Agreement with Conlan;

(d)     Awarding Conlan its reasonable costs and fees related to this Motion and the underlying litigation and discovery pertaining to this issue; and

(e)     Any other further relief the Court deems just.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By: */s/ Ryan D. Bohannon*
    Eric J. Pelton (P40635)
    Ryan D. Bohannon (P73394)
    Sean T.H. Dutton (P77515)
*Attorneys for Plaintiff*
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
rbohannon@khvpf.com
sdutton@khvpf.com

Dated: July 22, 2025

— 3 —

UNITED STATES DISTRICT COURT
FOR THE EASTEN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONLAN TIRE CO., LLC,

     Plaintiff,

v.

ALEC "A.J." GONZALES,

     Defendant.

Case No. 25-cv-10701-SDK-APP

Hon. Shalina D. Kumar

Magistrate Judge Anthony P. Patti

**Brief Supporting Plaintiff Conlan Tire's
Motion for Sanctions Due to Spoliation of Evidence**

# TABLE OF CONTENTS

QUESTIONS PRESENTED ..................................................................................... ii

TABLE OF AUTHORITIES .................................................................................. iii

BACKGROUND ................................................................................................... 3

ARGUMENT ...................................................................................................... 10

I.    Defendant intentionally spoliated his Yahoo emails, even after this
      Court ordered him to maintain those records, and sought to ensure
      his wrongdoing would not be uncovered, all supporting the severe
      sanctions provided by Rule 37(e)(2). .................................................... 10

CONCLUSION ................................................................................................... 17

## QUESTIONS PRESENTED

1.     Whether the Court should conclude that Defendant spoliated evidence under Federal Rule of Civil Procedure 37(e) when he deleted emails pertinent to a subpoena, after the filing of this lawsuit and the Court's entry of an Order requiring him to maintain all such electronically stored information.

2.     Whether the Court should conclude that the more severe sanctions provided under Rule 37(e)(2) are warranted where Defendant deleted those emails and sought to learn how to evade detection of his willful and intentional decision to hide evidence, meriting an adverse inference regarding the contents of the emails as well as an award of costs and fees to Conlan.

# TABLE OF AUTHORITIES

## Cases

*Adamczyk v. Sch. Dist. of City of Hamtramck Pub. Sch.*,
  667 F. Supp. 3d 534 (E.D. Mich. 2023) ...................................................... 11, 13, 14, 15

*Adkins v. Wolever*,
  554 F.3d 650 (6th Cir. 2009) ........................................................................................ 11

*Beaven v. U.S. Dep't of Just.*,
  622 F.3d 540 (6th Cir. 2010) ................................................................................... 12, 17

*Cap. Senior Living, Inc. v. Barnhiser*,
  713 F. Supp. 3d 407 (N.D. Ohio 2024) ...................................................................... 11

*WeRide Corp. v. Kun Huang*,
  No. 5:18-cv-07233, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ......... 12, 13, 14, 16

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*,
  774 F.3d 1065 (6th Cir. 2014) ................................................................................ 12, 16

## Statutes & Rules

Fed. R. Civ. P. 37 ....................................................................................................... 10, 11

## INTRODUCTION

The Court-ordered ESI review of Defendant's devices and Yahoo account has exposed his premeditated destruction of emails—proving he signed the Non-Solicitation and Confidentiality Agreement at the heart of this case and revealing his sole, day-one "defense" as a calculated fraud. For months, Defendant insisted that inspection of his Yahoo account would vindicate him because no emails existed exchanging signatures with Conlan. Yet he stonewalled Conlan's ability to obtain this very discovery, forcing multiple conferences before this Court. Now we know why.

On June 10, 2025, realizing he could no longer stall production of his Yahoo account after the initial hearing on these discovery issues, Defendant consulted ChatGPT about the subpoena Conlan had served on Yahoo and how to permanently purge responsive emails from his account. He asked ChatGPT, for instance, "if I delete an email today and permanently delete it from my trash folder.  How many days is yahoo still able to retrieve it?" ChatGPT answered: "seven days." Defendant executed his plan with precision—he waited until he ensured that period would expire without his deleted emails being discovered, then filed a new declaration reversing his initial sworn testimony from "I don't recall signing" to "I specifically recall receiving the Agreement from Conlan and NOT signing it."

But Defendant's new declaration, confirmed by his deposition testimony, creates an impossible paradox. Defendant testified receiving Conlan's signed Agreement from Michigan in July 2022—which could only have reached him in Texas via email—and

also testified that he did not delete relevant emails. Yet when finally compelled to produce his Yahoo account—after weeks more delay and a Court Order—not a single email from Conlan in July 2022 exists. Not the Agreement he admits receiving. Not his response. Nothing.

The ChatGPT evidence connects every piece of this puzzle and eliminates any innocent explanation. While testifying under oath that he never responded to Conlan's emails sending the Agreement, Defendant was secretly researching their permanent destruction and how to ensure they could never be found. He identified Yahoo's seven-day deletion window, destroyed the evidence, confirmed the window had closed, and then amplified his perjury with a new false declaration. Had he preserved even the email from Conlan attaching the Agreement, its metadata would have revealed whether he replied or forwarded it—creating a digital trail that would have exposed his web of lies. The proof is inescapable: testimony that demands at least one email exists, an empty Yahoo account where it should be, and ChatGPT queries revealing an intent to destroy all related evidence.

This intentional spoliation demands immediate and severe sanctions—an adverse presumption that he signed the Agreement and Conlan's full monetary recovery of the costs incurred in defending against and unmasking Defendant's fraud on the Court.

## BACKGROUND

Given the Court's familiarity with this case's history, Conlan provides only a brief discussion of previous proceedings to contextualize Defendant's ChatGPT searches for instructions on deleting emails and evading Yahoo's recovery capabilities.

Back on March 21, 2025, the Court entered an Order Requiring Defendant To Show Cause Why A Preliminary Injunction Should Not Be Entered Against Him. ECF No. 11. In that Order, the Court specifically directed Defendant "not to destroy, modify, discard, or hide any documents, information or electronic data related to this litigation." *Id.*, PageID.198.

For the next month, the parties pursued settlement while Conlan relied on the Court's Order and assurances from Defendant and his new employer that all breaches of the Agreement had ceased. Throughout this period, Defendant raised his sole defense: he had not signed the Agreement.[*] Although a signed Agreement existed, Conlan's business practices had not preserved the email from years earlier when Defendant emailed his signed copy to the Company.

When settlement failed, Defendant filed his response to Conlan's preliminary injunction motion with a carefully hedged declaration—falling short of claiming outright that he never signed the Agreement, and instead swearing under oath only that

---

[*] As Conlan explains further below, Defendant has not, at any point in these proceedings, contested the enforceability of the Agreement on the ground that it is unreasonable in terms, scope, or duration. *Infra* p. 17.

he "d[id] not recall signing" it and "do[es] not believe" the signature was his. *See* ECF No. 18-1, PageID.219–21. Again, this was the only meaningful defense Defendant raised in opposition to the preliminary injunction motion.

In reply, Conlan submitted a declaration from Chris Kenrick, the HR manager in Warren, Michigan who onboarded Defendant remotely for a position in Dallas, Texas. Kenrick detailed his standard business practices and testified that Defendant could not have begun working without first emailing his signed Agreement—a mandatory step in every hire. ECF No. 19-1, PageID.233-239.

Before the scheduled hearing on Conlan's motion on April 29, 2025, Defendant's counsel volunteered an ESI forensic review of Defendant's devices and Yahoo account, claiming they would vindicate Defendant by showing no communications with Kenrick except one August 2022 email. In chambers on the hearing date, the parties stipulated to a limited preliminary injunction and agreed to facilitate discovery on the signature issue and attempt settlement. ECF No. 21. Conlan initiated discovery in early May, but Defendant objected and stalled. *See* ECF No. 23; ECF No. 23-2, PageID.314–21.

Defendant's objections necessitated a May 29, 2025 discovery conference with the Court. At the conference, the Court confirmed that the requested discovery was reasonable, attempted to mediate issues, and directed the parties to work together to conduct what should be simple, straightforward discovery. Defendant's counsel promised the Court he would advance the case and work cooperatively to finish the needed discovery.

Leaving the first discovery conference, Defendant's counsel seemed to be cooperating. For instance, he promised, on June 6, that he "spoke with [Defendant] and we will be turning the Yahoo consent back to you shortly." ECF No. 29-5, PageID.567. Suddenly, however, everything halted again without explanation. We now know why: four days after promising to surrender his Yahoo account, on June 10, Defendant consulted ChatGPT about defeating Yahoo subpoenas. Contrary to what he had disclosed in the litigation, he confessed to ChatGPT that he had deleted emails responsive to the subpoena in the past, wanted to ensure those deleted emails could not be recovered by Yahoo, and—worse—was going to delete more emails and wanted confirmation on how long he had to wait to ensure Yahoo could never recover them:

| | |
|---|---|
| Defendant: | Can yahoo deny a subpoena for old[,] deleted emails if it is only a civil lawsuit and not criminal law suit [*sic*] in court? |
| ChatGPT: | In general, Yahoo (now part of Yahoo Inc., formerly under Verizon/Oath) cannot "deny" a valid subpoena — but what they are legally required or willing to provide depends on the type of lawsuit and the data available. |
| | . . . |
| Defendant: | I deleted a [*sic*] email a year ago from my yahoo account. Can yahoo still retrieve the email? |
| ChatGPT: | In almost all cases, Yahoo cannot retrieve an email that was permanently deleted a year ago. |
| | . . . |
| Defendant: | So even with a court ordered subpoena yahoo cannot retrieve the deleted email? |

| | |
|---|---|
| ChatGPT: | Correct — even with a court-ordered subpoena, Yahoo cannot retrieve a permanently deleted email if it no longer exists on their servers or backups. |

. . .

No court order, subpoena, or legal motion can recover a Yahoo email that has been permanently deleted for over a year.

Once Yahoo's deletion and backup cycle is complete, that email is unrecoverable by anyone.

. . .

| | |
|---|---|
| Defendant: | If I delete a [*sic*] email today and permanently delete it from my trash folder. How many days is yahoo still able to retrieve it? |
| | |
| ChatGPT: | If you delete an email today and permanently remove it from your Yahoo Trash folder, Yahoo may only be able to retrieve it for a very limited time — typically no more than 7 days, and often much less. |

---

- Key Timeframes to Know:

| Action | What Happens | Data Recovery Window |
|---|---|---|
| Email moved to Trash | It stays there for 30 days | Recoverable by you anytime within that period. |
| Trash manually emptied (permanent deletion) | Email is flagged for deletion from Yahoo's servers | Typically 0–7 days before it is unrecoverable |
| After Yahoo's final deletion | Email is permanently erased from Yahoo's systems and backups | No recovery possible, even by subpoena |

. . .

– 6 –

| Defendant: | Is yahoo able to pull a report that says what emails I permanently deleted? |
|---|---|
| ChatGPT: | No, Yahoo is generally not able to provide a report showing what specific emails you permanently deleted — especially after those emails have been purged from their system. |

. . .

(Ex. 1, Defendant's ChatGPT Searches on Yahoo Email Deletion.) ChatGPT thus confirmed that emails Defendant deleted a year ago were completely undiscoverable, and even emails he deleted now—after litigation commenced and the Court entered its preservation Order—would escape detection if he waited seven days. (*Id.*)

Consistent with that ChatGPT guidance, Defendant ceased cooperating with discovery and withheld his Yahoo account from inspection in mid-June. ECF No. 29, PageID.366–69. Then, six days after his ChatGPT conversation, i.e., June 16—precisely when he knew Yahoo (and so Conlan) would not have time to recover deleted emails— Defendant submitted a second declaration to the Court. ECF No. 28, PageID.355–58. This new declaration dramatically altered his sworn testimony: changing his prior claims of "I don't recall signing" to suddenly now "recall[ing] receiving and reviewing" the Agreement and "recall[ing] making the conscious decision not to sign." *Id.*, PageID.356.

On June 20, 2025, Defendant sat for his abbreviated deposition on the signature issue—still having made no progress on producing his Yahoo account. At this deposition, Defendant doubled down on his new story that he never signed or sent the Agreement to Kenrick, though he confirmed receiving and reviewing the Agreement

bearing Kenrick's signature. (Ex. 2 at 11–12 and Exhibit 2 to the Deposition.) But the only way the Agreement could have reached him in Texas from Kenrick in Michigan was via email (*see* Kenrick Dec., ECF No. 19-1, PageID.235, ¶ 4(f)), revealing an inherent contradiction in Defendant's testimony:

- He admits receiving Kenrick's signed Agreement (requiring an email from Michigan to Texas) (Ex. 2, Def. Dep., pp. 11–12)[†]

- He testified he did not delete any emails from Kenrick (*Id.* at p. 48)

- He testified that he did receive an email from Kenrick at his "business4aj@yahoo.com" account in August 2022 (*Id.* at p. 47)

Thus, according to Defendant's own testimony, at least one email from Kenrick dated July 2022 should be found in his Yahoo email account.

Following Defendant's deposition, the parties appeared before the Court on June 24. Conlan submitted a supplemental brief detailing Defendant's obstruction of discovery and seeking an adverse inference that his refusal to cooperate concealed unfavorable evidence. ECF No. 29. At that hearing, the Court again summoned counsel to chambers, inquired why they failed to complete simple discovery, and required the parties to resolve their ESI disputes in the Court's jury room. Later that same day, the Court entered an order expanding the preliminary injunction, mandating an ESI

---

[†] He does not recall how he received the Agreement from Kenrick, but Kenrick specifically stated that it was sent via email to Defendant (Kenrick Dec., ECF No. 19-1, PageID.235, ¶ 4(f)).

inspection with firm deadlines, and scheduling an evidentiary hearing for August 5, 2025, primarily on the signature issue. ECF No. 30; ECF No. 31.

Fully complying with the Court's Order to analyze the integrity of the data of Defendant's devices and electronically stored information, *see* ECF No. 30-2, ¶ 6(e), N1 Discovery examined Defendant's iCloud account for search terms like "delete." This search uncovered the smoking gun: Defendant's above-quoted June 10 ChatGPT conversation seeking instructions on permanent email deletion to evade any forthcoming Yahoo subpoena. (Ex. 1.)

Defendant finally authorized the Yahoo subpoena on June 27, 17 days after ChatGPT confirmed deleted emails would be permanently purged in seven days. (Ex. 3, Def. Yahoo Subpoena Authorization.) And he only submitted his Yahoo account to N1 Discovery on July 7, 27 days after learning of the seven-day window. (Ex. 4, N1D's Confirmation.) As a result, N1 Discovery was not permitted to access and review his electronically stored information and present its forensic analysis to Conlan until July 16.

Both Yahoo and N1 Discovery have now confirmed what ChatGPT promised: Defendant's deleted emails are gone forever. (Ex. 5, Yahoo Response.) This leaves an odd result—per Defendant's and Kenrick's testimony, Defendant should possess at least one July 2022 email from Kenrick to Defendant's "business4aj@yahoo.com" email account, but that email is notably absent following his ChatGPT-led education on how to delete emails. N1 Discovery's forensic capabilities explain Defendant's

– 9 –

motivation to delete even the innocuous initial email he received from Kenrick: N1 Discovery is able to review the metadata of any emails in a Yahoo inbox, and can determine whether the recipient had "Seen, Flagged, Answered, [or labeled the email as] $Junk, $NotJunk, $Forwarded, etc.," with "Seen" indicating "Read/Unread" and "Answered" indicating "Replied To."  (Ex. 6, N1 Metadata Capabilities Discussion.) Given this obvious motive, the unexplained absence of any July 2022 emails from Kenrick, and Defendant's deeply incriminating ChatGPT conversation, this evidence proves Defendant intentionally spoliated the very documents at the heart of this case. Conlan therefore moves for sanctions.

## ARGUMENT

I.  **Defendant intentionally spoliated his Yahoo emails, even after this Court ordered him to maintain those records, and sought to ensure his wrongdoing would not be uncovered, all supporting the severe sanctions provided by Rule 37(e)(2).**

Under Federal Rule of Civil Procedure 37(e), "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the Court has authority to remedy the failing. Fed. R. Civ. P. 37(e). And, if the Court determines that the spoliating "party acted with the intent to deprive another party of the information's use in the litigation," Rule 37(e)(2) permits the Court to "presume that the lost information was unfavorable to the party"; "instruct the jury that it may or must presume the information was

unfavorable to the party"; or even "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2)(A)–(C). Moreover, "when a motion is granted a Court may award a party reasonable expenses incurred in bringing the motion," including the costs to "forensically examine" the other party's tech, the attorneys' efforts to discover and compel the spoliated evidence, and "other fees and costs incurred in responding to the spoliation and preparing and successfully litigating the [motion for sanctions]." *Cap. Senior Living, Inc. v. Barnhiser*, 713 F. Supp. 3d 407, 419 (N.D. Ohio 2024).

Pursuant to Rule 37(e), a party seeking sanctions for spoliation of evidence must meet an initial "three-part showing: (1) electronically stored information that should have been preserved in the anticipation or conduct of litigation was lost; (2) the party who had a duty to preserve the information failed to take reasonable steps to preserve it; and (3) the information cannot be restored or replaced through additional discovery." *Adamczyk v. Sch. Dist. of City of Hamtramck Pub. Sch.*, 667 F. Supp. 3d 534, 556 (E.D. Mich. 2023) (citation omitted). Then, the Court considers "whether the party who lost the information 'acted with the intent to deprive another party of the information's use in the litigation'" in order to obtain the more severe remedies in Rule 37(e)(2). *Id.* (quoting Fed. R. Civ. P. 37(e)(2)). In this regard, "[b]ecause failures to produce relevant evidence fall along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality," the Court should grant a sanction with a severity that "corresponds to the party's fault." *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (citation omitted). As the Sixth Circuit has held, "an adverse inference for evidence

– 11 –

spoliation is appropriate if the Defendants knew the evidence was relevant to some issue at trial and . . . [their culpable] conduct resulted in its loss or destruction," *Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 553 (6th Cir. 2010) (citation omitted; alterations in original), and courts may "rely on circumstantial evidence" in making these determinations, *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1071 (6th Cir. 2014) (citation omitted).

Courts have previously relied upon a party's internet searches to show culpable conduct and intentionality in the spoliation context. In *WeRide Corp. v. Kun Huang*, No. 5:18-cv-07233, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020), the Court analyzed a spoliation claim in a trade secret misappropriation case. There, the former-CEO defendant was allegedly "secretly working for [a competitor] while still technically employed by [the plaintiff]," and recruited the plaintiff's employees to that competitor during that time. *Id.* *2. Once the plaintiff discovered this fact, it terminated the defendant's employment, effective two weeks later. *Id.* In the interim, the defendant "ran internet searches for 'what is employee solicit and consequence' and 'what is employee solicit consequence penalty,'" before reformatting one computer to "completely eras[e] its memory" and "delet[ing] multiple files from" another computer, thereafter returning those computers to the plaintiff once his employment concluded. *Id.* In concluding that the defendant's conduct merited the more severe sanctions of Rule 37(e), the Court noted that the defendant "attempted to recruit [ ] employees to join [a competitor] while still employed by [the plaintiff]," and then, after his

– 12 –

employment was terminated, "[o]ver the next two days, he conducted internet searches for the consequences of soliciting employees," showing that "a reasonable person would understand that litigation was foreseeable." The Court held that the defendant "was under a duty to preserve the [electronically stored information]." *Id.* at *15. Moreover, because, among other things, the defendant's spoliation occurred "in violation of the preliminary injunction," the Court found that severe sanctions were necessary to remedy the defendant's conduct. *Id.* at *16.

Here, Defendant's conduct in deleting his relevant Yahoo email meets the initial three-prong test for spoliation. First, evidence shows that "electronically stored information that should have been preserved in the anticipation or conduct of litigation was lost." *Adamczyk*, 667 F. Supp. 3d at 556. Yahoo's subpoena response concludes that Defendant's email account maintains none of the emails to or from Kenrick attaching the Agreement, (Ex. 5 at 2–3), even though Defendant testified he reviewed an Agreement signed by Kenrick, (Ex. 2 at 11–12), which was transmitted via email since Kenrick is in Michigan and Defendant in Texas. This supports the conclusion that there was relevant electronic information that should have been stored, but that has since been lost.

Second, Defendant did not "take reasonable steps to preserve" that electronically stored information. *Adamczyk*, 667 F. Supp. 3d at 556. Defendant's ChatGPT queries expose both past and ongoing destruction of evidence:

- He revealed his perjury by asking ChatGPT about "email[s] [he] deleted a year ago from [his] [Y]ahoo account"—directly contradicting his sworn testimony that he "never deleted emails." (Ex. 2 at 48–49). This admission alone proves he fabricated testimony to perpetuate a fraudulent defense.

- Far more damaging, Defendant actively planned future spoliation while litigation was pending. He asked ChatGPT: "if I delete an email today and permanently delete it from my trash folder. How many days is yahoo still able to retrieve it?" (Ex. 1.) This question—posed months into litigation and after the Court's preservation order—demonstrates deliberate intent to destroy evidence he knew was critical to the case. And it shows that he wasn't merely inquiring about standard-issue deletion; he was calculating the precise window of time to ensure permanent destruction beyond any subpoena's reach.

Even beyond mere failure to "preserve" the emails, these queries establish every element of spoliation: Defendant knew the emails were relevant (they formed the sole factual dispute), he had a duty to preserve them (under both the Court's order and litigation hold), he was court-ordered to produce them, and he intentionally destroyed them after confirming they would be unrecoverable. *See WeRide Corp.*, 2020 WL 1967209, at *15. Defendant's own testimony cannot be reconciled. If Defendant knows for certain he received Kenrick's signed Agreement and he never deleted a relevant email, those emails with Kenrick should still exist. Their absence—combined with Defendant's ChatGPT queries about permanent deletion and evading a Yahoo subpoena—proves he destroyed them, *see infra* pp.15–16, but also shows clearly that he did not "take reasonable steps to preserve" the emails, *Adamczyk*, 667 F. Supp. 3d at 556.

Third, these deleted emails "cannot be restored or replaced through additional discovery." *Id.* As Yahoo explained in its subpoena response, it "does not maintain Yahoo email on its servers that is not directly accessible to an active user of an email address," and "does not archive or keep records of deleted Yahoo email." (Ex. 5 at 1.) Because Defendant has deleted the relevant emails, and Yahoo has no way to override that action to recover them, Conlan is unable to obtain this evidence elsewhere. *Adamczyk*, 667 F. Supp. 3d at 556. In addition, Defendant's deletion of even the email he admits he received from Kenrick further deprives Conlan of any possibility to review that email's metadata, which could show whether Defendant had responded to Kenrick at that time. (Ex. 6.) Therefore, Defendant's conduct clearly meets the initial three-prong test for finding spoliation of evidence.

Turning to the requirements for elevated sanctions under Rule 37(e)(2), Defendant's conduct is significantly willful and intentional, such that the Court should enter an adverse inference and grant Conlan costs and fees.  Again, Defendant was well aware the emails were relevant to Conlan's claims in this matter.  His entire conversation with ChatGPT began with a discussion of "a subpoena for old[,] deleted emails" in a "civil suit" directed to "[Y]ahoo." (Ex. 1.) That subpoena to Yahoo was limited to any email conversations Defendant might have had with Conlan employees or agents, specifically including Kenrick. Thereafter, he admitted that—within this subpoena context—he had "deleted a [*sic*] email a year ago from [his] [Y]ahoo account," and sought to ensure that fact would not be discoverable by Yahoo, a forensic examination,

– 15 –

Conlan, or the Court. (*Id.*) He then doubled down and asked what would happen if he "delete[d] a [*sic*] email today and permanently delete[d] it from [his] trash folder." (*Id.*) This query specifically envisioned deleting a relevant email, during ongoing litigation, after this Court had entered an order requiring him to maintain all such files. ECF No. 11, PageID.198. These sorts of incriminating questions and their context are exactly the type of "circumstantial evidence" the Court can rely upon, *Yoder & Frey*, 774 F.3d at 1071, to conclude that severe sanctions are necessary to remedy a party's spoliation, *WeRide Corp.*, 2020 WL 1967209, at *16.

Additional context regarding Defendant's litigation conduct further supports these inferences and the need for severe sanctions. Defendant initially provided the Court a declaration in which he claimed only that he did not "recall" signing the Agreement, ECF No. 18-1, PageID.219, leaving himself significant wiggle room should later developments in discovery definitively prove that he had signed the Agreement. But, after being emboldened by ChatGPT, both about the inability to recover previously deleted emails and the limited ability to recover contemporaneously deleted emails after only seven days, (Ex. 1), Defendant took a more forceful approach. In his second declaration, he now claims that he specifically "recalled" receiving the Agreement from Kenrick and "recalls" consciously choosing to not sign. ECF No. 28, PageID.355. (*See also* Ex. 2 at 11–12). In other words, this contextual timeline of events shows that Defendant relied upon his destruction of relevant electronically stored information that would have contradicted his litigation position, in order to further

perpetuate a fraud upon Conlan and the Court with his later second declaration and deposition testimony.

And further supporting the egregiousness of Defendant's conduct is the fact that his spoliation occurred on the *sole* issue to be litigated in the preliminary-injunction context. As Conlan has explained, Defendant has taken the unusual, albeit necessary, tack in this case not to contest the enforceability of the Agreement because it is sensible in terms, scope, and duration. *See, e.g.*, ECF No. 19, PageID.225–26. In other words, the *only* issue left in determining whether Conlan was entitled to a preliminary injunction enforcing the Agreement's covenants was whether Defendant was bound to it, and "Defendant['s] destruction of the [emails] 'severely compromised' . . . [Conlan's] case by depriving [it] of the most relevant piece of evidence to prove [its] claims." *Beaven*, 622 F.3d at 555. Thus, "a spoliation inference for a critical element of the case" is proper. *Id.* Given this context, and Defendant's willful disregard for the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and this Court's own Orders, severe sanctions including an adverse inference and an award of fees and costs to Conlan are necessary to remedy Defendant's malfeasance.

## CONCLUSION

Conlan respectfully requests that this Court grant sanctions against Defendant for spoliation of evidence, and award Conlan: (1) an adverse inference on the contents of the deleted email(s); (2) all reasonable fees and costs accrued in litigating the existence of these emails and his signature on the covenant agreement (including attorneys fees,

costs of forensic investigation of Defendant's devices, and costs of retaining a handwriting expert); and (3) any and all other relief the Court deems just and necessary to remedy Defendant's intentional misconduct.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By: */s/ Ryan D. Bohannon*
    Eric J. Pelton (P40635)
    Ryan D. Bohannon (P73394)
    Sean T.H. Dutton (P77515)
*Attorneys for Plaintiff*
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
rbohannon@khvpf.com
sdutton@khvpf.com

Dated: July 22, 2025

– 18 –

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants on record.

*/s/ Ryan D. Bohannon*
Ryan D. Bohannon (P73394)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
rbohannon@khvpf.com