UNITED STATES DISTRICT COURT
FOR THE EASTEN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONLAN TIRE CO., LLC,

    Plaintiff,

v.

ALEC "A.J." GONZALES,

    Defendant.

Case No. 25-cv-10701-SDK-APP

Hon. Shalina D. Kumar

Magistrate Judge Anthony P. Patti

**Reply Brief Supporting Plaintiff Conlan Tire's Motion
for Sanctions Due to Spoliation of Evidence**

Defendant continues lying. Each lie throughout this case digs him deeper. His Response confirms rather than refutes the spoliation, distorts the record, falsely attacks the Court-appointed vendor, and shows why maximum sanctions are warranted.

**I.        Defendant's Response confirms he intentionally deleted relevant emails.**

Defendant's Response backfires. Rather than explaining away the evidence of spoliation, his fabricated excuses create new contradictions that further confirm his guilt. Two core facts prove Defendant intentionally spoliated evidence: (1) Defendant's ChatGPT research for evading a subpoena to Yahoo, and (2) the email from Kenrick that must have existed in his Yahoo email account and must have been deleted. His response offers no credible—or even remotely plausible—explanation for either.

**A.        Defendant's excuses about his ChatGPT research confirm his guilt.**

Defendant's own words to ChatGPT expose his guilt. (ECF No. 32-2.) Mere days before signing the Yahoo subpoena authorization, his research targeted one goal: ensuring Yahoo couldn't produce evidence of the emails he deleted. The more implausible the explanations he concocts, the more obvious his guilt. Yet this is the corner he backed himself into.

Defendant's three shifting fabricated excuses don't merely fail, they demolish his credibility and confirm his culpability.

1. Defendant claims he researched Yahoo deletions to evaluate whether a search of his "iCloud account" had a "credible basis." (Resp.1–5.) The ChatGPT transcript exposes this lie—Defendant never mentions iCloud anywhere in his conversation (*see* ECF No. 32-2). His queries focus exclusively on ensuring Yahoo email deletion and subpoena evasion.

2. Defendant claims he feared a "fishing expedition" into alleged 2025 defamation. (Resp.1–2 n.1 & 5.) But Conlan's search parameters target only three search terms over a two-month window from 2022. (ECF No. 30-3, PageID.595.) They couldn't possibly reveal alleged defamation occurring in 2025.

3. Defendant finally argues his ChatGPT research was to figure out "why Conlan wasn't searching its own systems." But, (a) Conlan repeatedly offered to search its own systems—which Defendant rejected, (ECF No. 23-2, PageID.314); and (b) the ChatGPT transcript focuses exclusively on defeating Yahoo subpoenas—Defendant knows Conlan doesn't use Yahoo email accounts.

Defendant thus has offered no innocent explanation for his ChatGPT research into destroying evidence; his excuses are unbelievable fabrications, and they prove his premeditated scheme to destroy evidence.

## B.   Defendant can't explain why the email from Kenrick is gone.

Defendant's testimony creates an impossible contradiction: (1) he received and reviewed the employment packet Kenrick sent from Michigan to Texas, which includes the Agreement (*see* ECF No. 19-1, PageID.242–50), and (2) he never deleted relevant emails. (ECF No. 28, PageID.355, ¶ 3; ECF No. 32-3, PageID.633, 642) If both deposition statements are true, Kenrick's transmission email must exist in his Yahoo account—but the email is gone. Desperate to explain this contradiction, Defendant's newest hypothesis is a "physical delivery" story claiming he might have received Kenrick's employment packet in person at the Texas store on his first day of employment. (ECF No. 35-2, PageID.732, ¶¶ 6–7.) This story is impossible:

- **Defendant's testimony proves the email existed.** When asked at deposition "why [he] had this purported email [the Kenrick employment packet] in your Yahoo account" and nothing else, Defendant didn't deny receiving it via email—he confirmed "That was all that was sent to me." (ECF No. 32-3, PageID.642.)

– 2 –

> This admission proves the email existed in his Yahoo account until he deleted it, and he's now lying to cover his tracks.

- **Defendant abandons sworn testimony for pure speculation.** Defendant has dissembled his testimony from admitting he received an email to claiming he "doesn't recall" to merely hypothesizing it's "plausible" he received the documents in person. (ECF No. 35-2, PageID.732, ¶ 7.) This is at least his third version of events—a lie built on previous lies offering increasingly baseless conjecture (but no evidence) to get him out of this jam.

- **Business practices demolish his speculation.** Kenrick, however, has consistently testified that Conlan's business practices require that he handle pre-employment documents like the offer letter, Agreement, and customized pay/commission document directly with candidates via email—never through store locations—which documents must be completed before the employee starts employment at a physical office or store location. (ECF No. 19-1, PageID.233–39; Ex. 1, Kenrick Declaration, ¶¶ 2–3.)

- **ESI evidence exposes his declaration as false.** The record proves Defendant received and sent his other pre-employment documents (*e.g.*, application, written exercises, background check form) via email to Kenrick's recruiter colleague, undercutting his latest sworn and false speculation that "all" documents were handled in person. (Ex. 1, ¶¶ 3(a), 4.)

- **Selective signing exposes the absurdity of his theory.** Defendant's story creates another paradox: he speculates "all" documents were handled in person yet intentionally didn't sign just the three from Kenrick's emailed packet (the offer letter, Agreement, and pay/commission addendum). (ECF No. 19-1, PageID.242–50.) If true, why sign so many policy documents and not the innocuous pay addendum that simply confirmed his compensation? The only logical explanation is the pay addendum was never physically present at the store because, as Kenrick consistently testified, it was part of the packet, including the Agreement, transmitted via email as a single PDF. (Ex. 1, ¶¶ 2–4.)

Defendant offers nothing but baseless speculation to refute record evidence proving at least Kenrick's transmission email existed and he destroyed it. If preserved, Kenrick's transmission email would have shown whether Defendant replied, forwarded, or took any action—creating an unalterable digital trail of his signature process. By destroying this evidence once it was apparent the Yahoo subpoena would

issue per Court order—as discussed at the First Discovery Conference (*see*, Ex. 2, Appendix–Discovery Timeline, App.2)—Defendant eliminated the smoking gun he knew would expose his fabricated defense.

All evidence—and basic common sense applying Occam's Razor—confirms the same conclusion: Defendant deleted evidence in violation of the Federal Rules and this Court's preservation order. His lies to cover up his lies are a transparent attempt to obstruct justice, and each new fabrication only confirms the impossibility of his story and malicious intent to deprive Conlan and the Court of critical evidence.

## II. Defendant's Response creates more lies to cover his prior lies.

Facing evidence of spoliation, Defendant resorts to blaming everyone but himself—including the Court-appointed vendor that exposed his spoliation and the handwriting expert that confirmed his signature on the Agreement. His twisting of the record and misrepresentations dig him deeper.

*First*, Defendant falsely attacks N1 (and by extension the court's ESI Order) to deflect from his own misconduct. (Resp.5–6, 19.) The Court ordered N1 to "detect and analyze any … applications that could compromise electronic records" and authorized N1 to "use whatever tools and methods [it] deem[s] appropriate in [its] professional judgment to … ensure [the] data integrity … required by this Order." (ECF No. 30-2, PageID.591–92, ¶¶ 4(d), 6(e).) ChatGPT conversations about permanent email deletion are precisely such "applications" and searching for words like "delete" are "methods" N1 was authorized to use. N1 thus complied with the Court's order.

– 4 –

*Second*, Defendant distorts the record by claiming N1 found "no evidence" of his digital signature, but conveniently omits that this analysis covered only a 2025 iPad he didn't own in 2022. (Resp.14–15, 17; ECF No. 35-4, PageID.744.) He was under Court Order to produce his laptop, cell phone, and other devices used in 2022 plus their associated iCloud accounts. (ECF No. 30-2, PageID.590, ¶ 1.) Instead, he produced only his laptop and an iCloud account for an iPad acquired in June 2025—three years after the signature was created.* (ECF No. 32-3, PageID.634) Of course the 2025 iPad wouldn't contain evidence of a signature from 2022. Defendant's argument is dishonest—he's claiming vindication from searching devices he never owned during the relevant period, much like burying a murder weapon in a field and then proclaiming innocence because police searched *a different field*.

*Finally*, Defendant misrepresents the ChatGPT timeline. (Resp.4–5.) ChatGPT told Defendant that permanently deleted emails become "unrecoverable" within "typically no more than 7 days"; the longer 30 day window applied only to emails moved to trash, not permanently deleted. (ECF No. 32-2, PageID.629.) Regardless, Defendant's claim he produced his Yahoo account to N1 "a couple of weeks" before the 30-day deadline is false. (Resp.5.) He violated the Court's June 30 deadline for

---

* Defendant is also in flagrant violation of the Court's Order by concealing his phone. Despite testifying he still possesses it (ECF No. 32-3, PageID.633), Defendant withheld the device from production. His counsel now claims Defendant no longer has the phone and has promised but failed to provide evidence supporting this assertion. Regardless, no excuse exists for withholding the iCloud account that must still exist, as the data would merely be moved to his new iPhone. (*Id.* at PageID.642.)

– 5 –

production, surrendering his account on July 7, 27 days after his ChatGPT conversation and well beyond any recovery window. (Ex. 3, 7/9/25 N1 Email; Ex. 4, Yahoo Emails.) The Court may well remember that at the Second Discovery Conference, it admonished Defendant for going radio silent for weeks and not responding to Conlan's draft ESI protocols following the First Conference. (*See* Ex. 2, App.2–3.) Defendant's silence appears to be calculated—intentionally timed to wait out even the maximum recovery window after deleting evidence.

### III. Defendant's spoliation, multiple violations of Court Orders, and strategy of obstruction warrant maximum sanctions.

Defendant has systematically violated this Court's Orders and continues his obstructionist conduct. He violated the preservation Order by intentionally deleting (at least) the email that must exist. He violated the Court-ordered June 30 deadline for producing his Yahoo account. He violated the Court-ordered July 10 deadline to produce his cell phone and associated iCloud account. And he continues to obstruct the Court's Order by refusing to produce a handful of obviously relevant documents from N1's completed investigation that are relevant to this motion, until the 11th hour, midday the day before the hearing. (Ex. 5, 7/31/25 Email Chain; Ex. 6, 8/4, Email Chain.) Additionally, his counsel refuses to authorize limited additional ESI that is clearly needed and also relevant to this motion. (Ex. 7, 7/30/25 Email Chain.) This strategy of delay and obstruction is well documented in the provided Appendix. (Ex. 2.)

Defendant's misconduct has only escalated since this motion. The day Conlan filed, Defendant retaliated against the Court-appointed forensic vendor through inappropriate *ex parte* contact and a defamatory Google review, demonstrating his vindictiveness and consciousness of guilt. (Ex. 8, N1 Email; Ex. 9, Defamatory Review.)

The evidence already overwhelmingly proves Defendant signed the Agreement and is trying to spoliate evidence to cover his tracks, justifying an adverse inference. But sanctions must go further. Defendant's lies throughout this case, and now the destruction of evidence, have generated at least half the fees Conlan has been forced to spend in this case. In addition, Conlan has been forced to incur considerable costs on handwriting experts and e-discovery vendors, which never would have arisen had Defendant simply preserved the transmission email that would have ended this case before it began. The evidence of spoliation is overwhelming, his ongoing misconduct and obstruction is undeniable, and the Court should issue maximum sanctions.

Dated: August 4, 2025

Respectfully submitted,

By: /s/ *Ryan D. Bohannon*
Eric J. Pelton (P40635)
Ryan D. Bohannon (P73394)
Sean T.H. Dutton (P77515)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
epelton@khvpf.com
rbohannon@khvpf.com
sdutton@khvpf.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants on record.

*/s/Ryan D. Bohannon*
Ryan D. Bohannon (P73394)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
rbohannon@khvpf.com
