UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CONLAN TIRE CO., LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>ALEC GONZALES,<br><br>                    Defendant. | Case No. 25-10701<br>Honorable Shalina D. Kumar<br>Magistrate Judge Anthony P. Patti |

**ORDER REGARDING PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS (ECF NO. 32)**

**I.    Introduction**

Plaintiff Conlan Tire Co., LLC ("Conlan") moves this Court for sanctions under Federal Rule of Civil Procedure 37(e) against defendant Alec Gonzales ("Gonzales") for intentionally deleting electronically stored information ("ESI") from his Yahoo email account. ECF No. 32. Conlan's motion has been fully briefed, and the Court heard extensive oral argument on August 5, 2025. ECF Nos. 32, 34, 35, 36.

**II.    Background**

Whether Gonzales signed Conlan's Non-Solicitation and Confidentiality Agreement (the "Agreement") in July 2022 as part of his employment with Conlan is the paramount issue in this case and the crux

of this motion. Conlan alleges that Gonzales breached the Agreement by soliciting Conlan customers for his new employer after Conlan terminated his employment in December 2024. *See* ECF No. 1. Gonzales contends that he never signed the Agreement, despite Conlan having a copy of the Agreement with his purported signature dated July 13, 2022. *See* ECF Nos. 5-3, 18-1, 22. Gonzales disputes the authenticity of that signature, initially swearing that "he did not recall" signing the Agreement, ECF No. 18-1, PageID.219, ¶ 4, and later declaring under oath that he "never agreed to nor personally signed" the Agreement. ECF No. 28, PageID.355, ¶ 2. Gonzales alleges that someone else added an image of his signature on the Agreement. *Id*. at PageID.356, ¶ 4.

  To support this claim, Gonzales asserts that the signature on the Agreement appears to be an exact replica of two other signatures from Conlan's Offer Letter and Addendum 1A, which he likewise disputes signing. *Id*., ¶ 5. He attests that he physically signed all other on-boarding documents contained in his personnel file and those signatures do not match those on the three other documents, including the Agreement. *Id*., ¶ 7. Notably, he declares under the penalty of perjury that he had no means to apply an electronic signature in July 2022, on either his MacBook laptop,

which he still has, or on his July 2022 cell phone "which [he] still possess[es] and use[s] today." *Id.* at ¶ 6.

Gonzales' assertion that he never signed the Agreement prompted the parties to stipulate to an order regarding Gonzales' ESI. *See* ECF No. 30. The order required Gonzales to provide Conlan's forensic examiner full access to his Yahoo e-mail account by June 27, 2025, so that the data from that account from the period of July 10, 2022 to August 31, 2022 (the "Relevant Period") could be collected and preserved. ECF No. 30-1. Similarly, the order required Gonzales to provide forensic examiners access to his laptop, cellphone, and any other devices he used and owned in July 2022 and to the iCloud account associated with the Apple devices he used in 2022 by no later than July 10, 2025. ECF No. 30-2. Finally, the order required Gonzales to execute and email the authorization required by Yahoo to respond to Conlan's subpoena by June 27, 2025. ECF Nos. 30, 30-3.

According to Conlan, Gonzales provided the Yahoo authorization on June 27, 2025, as ordered, but failed to provide the forensic examiner access to his Yahoo account until July 7, 2025. ECF No. 36-3. Conlan also asserts, and counsel for Gonzales did not dispute at the hearing, that Gonzales provided access to his laptop but not to his 2022 cellphone,

which, contrary to his sworn testimony, *see* ECF No. 28, he now maintains he no longer owns, or the iCloud account associated with Gonzales' 2022 cellphone.[1]

The forensic examination of Gonzales' Yahoo account did not find emails attaching the signed Agreement to or from Gonzales and Conlan. But the forensic examination of Gonzales' devices revealed that on June 10, 2025, Gonzales used ChatGPT to research how and when deleted emails could be retrieved and produced by Yahoo under a subpoena. ECF No. 32-2. Gonzales queried ChatGPT on Yahoo's ability to retrieve deleted emails: he asked if Yahoo could retrieve an email deleted from his Yahoo account a year ago, even if it were under a subpoena (no); he then asked how long an email permanently deleted today would be retrievable by Yahoo (at most seven days); and finally, he inquired if Yahoo maintains a log of permanently deleted emails (no user deletion history is maintained for individuals and permanently deleted emails are not tracked in an audit log). *Id*.

---

[1] At the hearing conducted on this motion, Conlan's counsel explained that Gonzales provided access to an iCloud account but that it contained back-ups only from his iPad, which he acquired in 2025. There was no back-up for either the cellphone Gonzales used in 2022 or the one he uses currently.

### III. Discussion

If ESI that should have been preserved in the conduct of litigation is lost and "cannot be restored or replaced through additional discovery, the court:"

> upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Upon discovering Gonzales' queries about permanent deletion of Yahoo emails, Conlan immediately filed this motion for spoliation sanctions under Rule 37(e), arguing that his ChatGPT questions about how and when Yahoo can retrieve or recover deleted emails convinced Gonzales he could delete impeaching emails to and from Conlan without any risk of detection, and establishes that he intentionally deleted emails responsive to Conlan's discovery requests and subpoena. ECF No. 32.

Gonzales argues that his ChatGPT inquiries were aimed at determining whether Conlan's proposed forensic search of Gonzales' iCloud account "had any credible basis…or was just an excuse to engage in a fishing expedition for something else." ECF No. 35, PageID.708.

Gonzales further argues that, if anything, ChatGPT's responses would have dissuaded him from deleting emails from his Yahoo account because they indicated that deleted emails could be retained and therefore retrieved up to 30 days from deletion. *Id*. at PageID.709. "[T]he ChatGPT queries confirmed that any emails deleted June 10th would still potentially be recoverable a month later, on July 10th—*a couple of weeks after Gonzales already provided [the forensic examiner] with complete access to his Yahoo account.*" *Id*. at PageID.709-10 (emphasis in original).

The Court does not find Gonzales' justification of his AI-assisted research into the mechanics of deleted Yahoo email retrieval under a subpoena convincing or even credible. He offers no explanation for how his inquiries, specifically tailored to Yahoo's abilities and protocol for retrieving, producing, and logging deleted emails, relate to Conlan's requested access to Gonzales' iCloud account(s). Nor can the Court discern any rational connection.

Equally unavailing is Gonzales' argument that his AI research would have dissuaded him from deleting his Yahoo emails to avoid their discovery. He contends that he would not have deleted the emails on June 10th because ChatGPT indicated that they would still be discoverable for 30 days. First, the information provided by ChatGPT revealed that

permanently deleted email messages become unretrievable in seven days or less, not 30 days. ECF No. 32-2, PageID.629. Email messages sent to the trash folder could be retrieved for up to 30 days and messages in the trash folder for more than 30 days are permanently deleted. *Id*. However, ChatGPT advised that, if "you delete an email today and permanently remove it from your Yahoo Trash folder, Yahoo may only be able to retrieve it for a very limited time—typically no more than 7 days, and often much less." *Id*. Thus, if Gonzales deleted emails and emptied his trash folder on June 10th, he could be reasonably assured they would be unrecoverable no later than June 17th. Accordingly, even if Gonzales knew he would be required to provide access to his Yahoo account within 30 days, the information he gleaned from ChatGPT would not have dissuaded him from deleting email messages from his inbox and the trash folder that day.

     Importantly, Gonzales could not have known when he would be required to provide access to his Yahoo account and his various devices because, as of June 10th, there was no definite deadline for production. According to Conlan, Gonzales evaded its efforts to negotiate terms, including deadlines, for ESI production throughout most of June. *See* ECF No. 36-3. Not until June 24th did the Court issue an order to enforce deadlines—negotiated by counsel for the parties as part of the status

conference held that day—of June 27th (authorization for Yahoo to produce subpoenaed emails), June 30th (full access to Gonzales' Yahoo account), and July 10th (access to devices owned and used in July 2022). ECF Nos. 30, 30-1, 30-2. Thus, even if Gonzales believed the Yahoo emails would remain discoverable for 30 days after deletion, he would not have been certain that he was within that window.[2] The record does not support Gonzales' argument that the ChatGPT information would have discouraged deletion of the Yahoo emails.[3]

Gonzales' argument that his granting the forensic examiner access to his Yahoo account two weeks before the deleted emails would have become unrecoverable evinces that he did not delete any email messages is specious. ECF No. 35, PageID.710. As discussed above, ChatGPT's responses indicated that permanently deleted emails become unretrievable within seven days. Gonzales did not provide the forensic examiner access to his Yahoo account until July 7th, a full week beyond the Court-ordered

---

[2] Conlan's arguments assume that Gonzales deleted his emails on June 10th, but nothing in the record precludes the possibility that he deleted them before that date.

[3] The record does support that Gonzales delayed providing access to his Yahoo account for as long as possible, conduct consistent with an effort to stretch beyond Yahoo's window for retrieval of deleted emails.

deadline and 28 days after Gonzales learned that any emails permanently deleted on (or before) June 10th were well out of reach.[4] ECF No. 36-4. In sum, the date Gonzales provided Conlan access to his Yahoo account was well beyond the time any emails permanently deleted on or before June 10th would have been recoverable. Because Gonzales provided access to his Yahoo account when, according to ChatGPT's information, there was no longer a risk of detecting deletions, the timing of his production does not refute deletion.

Finally, the Court notes that Gonzales filed his new declaration on June 16th, therein changing his April 24th testimony of not recalling signing the Agreement, ECF No. 18-1, PageID.219, ¶ 4, to the more emphatic "I never agreed to nor personally signed" the Agreement and I made "the conscious decision not to sign" the Agreement, ECF No. 28, PageID.355, ¶¶ 2, 3. That Gonzales' certainty about not signing the Agreement would, by mere coincidence, crystalize just after he learned that permanently deleted emails cannot be retrieved by Yahoo strains credulity.

For these reasons, the Court rejects Gonzales' contrived, implausible, and deceptive arguments regarding his ChatGPT queries and agrees with

---

[4] Even if permanently deleted messages were recoverable for 30 days, Gonzales provided access to his Yahoo account on July 7th, only two days, not two weeks, before any deleted messages would be unretrievable.

Conlan that Gonzales' conduct provides compelling evidence of intentional deprivation of information under Rule 37(e). Nevertheless, the Court is not yet convinced that the lost information cannot be "replaced through additional discovery." Fed. R. Civ. P. 37(e).

Accordingly, the Court **GRANTS IN PART** Conlan's motion for sanctions (ECF No. 32). The Court awards Conlan all reasonable fees and costs (including attorneys' fees) incurred in litigating the existence of Gonzales' emails to be paid by Gonzales. Conlan shall submit a bill of costs by **September 8, 2025**.

The motion's remaining requests for relief—an adverse inference against Gonzales regarding the content of the deleted emails, and further fees and costs to Conlan for litigating the authenticity of Gonzales' signature—are **HELD IN ABEYANCE** pending the additional discovery outlined below.

First, the timeframe for preservation and collection of ESI is expanded to span from July 1, 2022 until August 31, 2022 (the "Revised Relevant Period"). All forensic inspection ordered herein shall be for the Revised Relevant Period. Forensic inspection conducted for the Relevant Period defined in this Court's earlier order may be repeated to collect and preserve ESI from July 1, 2022 through July 9, 2022.

Second, Gonzales will immediately produce to Conlan's forensic examiner(s):

- Any electronic device Gonzales owned and used in July 2022 not already produced;

- Any external drive or portable storage device, such as flash drives, thumb drives, SD cards, HDD or SSD drives, used to back up other devices, including the cellphone Gonzales used in July 2022;

- User IDs, passwords, security codes, and any other authentication credentials required for full access to the iCloud account *associated with the cellphone he used in July 2022 and the cellphone he currently uses*;

- User IDs, passwords, security codes, and any other authentication credentials required for full access to the iCloud account *associated with any other devices he used in July 2022*;

- User IDs, passwords, security codes, and any other authentication credentials required for full access to any other cloud-based storage account *associated with the devices, including the cellphone he used in July 2022*;

Third, Gonzales, at his own expense, may forensically inspect ESI related to Gonzales from Conlan and/or its associated human resources service provider from the Revised Relevant Period.

Fourth, the parties may depose Katie Chess of HR1 regarding her involvement with the paperwork connected to the hiring of Gonzales.

This discovery must be completed by **October 6, 2025**.

By **October 20, 2025**, the parties shall submit supplemental briefs no longer than five pages to update the Court on the outcome of the additional discovery and its implication for the portion of the motion for sanctions held in abeyance.

The Preliminary Injunction entered by the Court on April 29, 2025 is hereby extended until Conlan's motion for sanctions is fully resolved.

**IT IS SO ORDERED.**

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: August 11, 2025