UNITED STATES DISTRICT COURT
FOR THE EASTEN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONLAN TIRE CO., LLC,

    Plaintiff,

v.

ALEC "A.J." GONZALES,

    Defendant.

Case No. 25-cv-10701-SDK-APP

Hon. Shalina D. Kumar

Magistrate Judge Anthony P. Patti

**Conlan Tire's Response to
Defendant's Motion for Clarification**

# TABLE OF CONTENTS

Introduction ................................................................................................................ 1

Background ............................................................................................................... 2

Standard of Decision.................................................................................................. 5

Discussion ................................................................................................................. 6

    I.    Defendant bypasses proper procedures to launch unsubstantiated attacks on Conlan's fee request. ....................................................................................... 6

    II.    Defendant's clarification motion is unripe, as he has not yet even propounded or served any discovery to Conlan or HR1. ..................................................... 8

    III.    Even if Defendant's motion were timely, it hijacks the Court's targeted sanctions Order to instead conduct a harassment campaign disguised as legitimate discovery, ignoring the Court's clearly defined limitations............................................ 9

Conclusion............................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*In re Oakland Physicians Med. Ctr., L.L.C.*,
　No. 2:19-CV-11773, 2020 WL 1323995 (E.D. Mich. Mar. 20, 2020) .......................... 6

*In re Walter*,
　282 F.3d 434 (6th Cir. 2002) ............................................................................... 6

*John B. v. Goetz*,
　531 F.3d 448 (6th Cir. 2008) ............................................................................. 11

*Scotts Co. LLC v. Liberty Mut. Ins. Co.*,
　No. 2:06-CV-899, 2007 WL 1723509 (S.D. Ohio June 12, 2007) .............................. 11

*United States v. Riley*,
　609 F. App'x 837 (6th Cir. 2015) ....................................................................... 6

**Statutes & Rules**

E.D. Mich. Local R. 7.1 ........................................................................................ 6

Fed. R. Civ. P. 37 ................................................................................................ 8

## INTRODUCTION

Defendant is at it again, perpetuating his deliberate and persistent pattern of delay and obfuscation that has plagued these proceedings from the start. *Exactly one month after* this Court found Defendant committed "intentional deprivation of information under Rule 37(e)" and crafted precise, limited additional discovery directives with a hard deadline of October 6, 2025 to determine whether "the lost information" from his email deletions could be recovered, Defendant files this motion seeking "clarification." (ECF No. 38, PageID.803–05.) With only three weeks remaining to find the emails he deleted before the Court determines the totality of the sanctions he will face, Defendant feigns ignorance about the meaning of this Court's discovery order—claiming he cannot understand whether the Court's expansion of "the timeframe for preservation and collection of ESI" from "July 10, 2022 to August 31, 2022" to "July 1, 2022 until August 31, 2022" (*Id.*, PageID.803) somehow authorizes him to engage in a wild goose chase for a fictional forger *in 2025*. This venture lacks any evidentiary foundation. Rather, Defendant's contrived confusion is meant to weaponize the Court's remedial discovery to harass Conlan, escalate costs, and distract from his proven spoliation.

Despite being sanctioned for deliberate evidence destruction and given a chance to minimize those sanctions with limited discovery, Defendant is not even trying to find the emails he deleted. Instead, he demands the right to ransack Conlan Tire's entire servers, unspecified email accounts, and unidentified electronic devices pursuing his manufactured conspiracy theory that contradicts the record evidence and this Court's

findings, while simultaneously scheming to minimize his liability for the fees his obstruction and spoliation have caused and continue to cause. And, oddly, Defendant seeks to compel this discovery without having even served discovery requests or identifying for the Court what specific requests he would serve if permitted. The Court should deny this diversionary attempt to weaponize its sanctions Order and perpetuate the very pattern of obstruction that has necessitated repeated judicial intervention throughout this case.

## BACKGROUND

On August 11, 2025, this Court granted, in part, Conlan's motion for spoliation sanctions, finding that Defendant "acted with the intent to deprive another party of the information's use in the litigation" when he deliberately destroyed emails from his Yahoo account. (*Id.*, PageID.802–03.) The Court's finding flowed from damning evidence: Defendant conducted ChatGPT research on June 10, 2025, which informed him that permanently deleted Yahoo emails vanish within seven days and that Yahoo maintains no deletion logs. (*Id.* at PageID.799.) Armed with this intelligence, Defendant orchestrated a delay, withholding access to his account until July 7—well beyond Yahoo's recovery window for emails deleted on or before June 10. (*Id.*, PageID.801–02.) The Court rejected Defendant's "contrived, implausible, and deceptive arguments regarding his ChatGPT queries," branding his justifications neither "convincing [n]or even credible." (*Id.*, PageID.802.) As initial sanctions, the Court "award[ed] Conlan all reasonable fees and costs (including attorneys' fees) incurred in litigating the existence

of Gonzales' emails to be paid by Gonzales," and ordering Conlan to "submit a bill of costs." (*Id.*, PageID.803.)

Because the Court was, however, "not yet convinced that the lost information cannot be 'replaced through additional discovery'" under Federal Rule of Civil Procedure 37(e), it crafted targeted discovery to locate the specific emails Defendant intentionally deleted, holding harsher sanctions in abeyance pending this narrow investigation. (ECF No. 38, PageID.803.) The Court confined that prescribed discovery to July 1–August 31, 2022 (the "Revised Relevant Period"), emphasizing that the sole mission was gathering evidence about the deleted emails to determine final sanctions. The directive encompasses expanded forensic inspection during this period; access to Defendant's concealed devices and cloud accounts, plus his current phone's iCloud account; reciprocal inspection rights for Defendant **within the same timeframe**, and a deposition of Katie Chess limited to "her involvement with the paperwork connected to the hiring of Gonzales." (*Id.* at PageID.804-05.)

Unfortunately, there has been a failure to launch on the Court-ordered additional discovery, due entirely to Defendant's delays and evasiveness. (*See* Exs. 1–7.) Since the Court's Order, Defendant has refused to identify what ESI he seeks from Conlan during the Revised Relevant Period or to serve discovery requests, and now declares he wants no discovery from that timeframe whatsoever. (Ex. 1, 8/15/2025 Email Chain re: Discovery; Ex. 2, Z. Mack Email on 9/9/25 @ 1:31 PM ("We will not be seeking any ESI from 2022.").) Instead, he now demands sweeping access to Conlan's 2025

– 3 –

communications and IT systems based on a speculative and unsupported signature theory, which goes beyond the limited discovery the Court ordered. Meanwhile, Defendant has stonewalled discovery the Court *actually* ordered, claiming he possesses no additional devices or iCloud accounts, then requiring two weeks and endless emails before permitting N1 Discovery to simply verify these assertions—with results still pending. (*See* Exs. 3-5, Email Chains from August 29, September 11 v.1, September 11 v.2.) When he alleged his current phone's iCloud account was nonexistent, Conlan requested his phone for narrow inspection over the relevant dates as it is the functional equivalent to what the Court ordered be inspected, which Defendant has so far categorically refused. (*See, e.g.*, Exs. 3 & 6.)

Despite threatening this motion just a few days after the Court's Order, Defendant waited nearly a month to file, submitting it just weeks before the October 6 discovery deadline in yet another calculated obstruction. (Ex. 1, 8/15 Z. Mack Email (stating "we may need to request an expanded Revised Relevant Period.").) His denial runs so deep that his counsel continues arguing that "[t]here is no evidence Gonzales deleted any relevant emails"—directly contradicting the Court's express findings. (*Compare* Ex. 6, Z. Mack August 28 Email, *with* ECF No. 38, PageID.798–803.) Building on these shaky premises, Defendant requests clarification regarding (1) what fees and expenses the Court contemplated when it awarded Conlan its fees and costs as sanctions against Defendant; (2) whether the Court's declaration that Defendant can forensically inspect Conlan's and HR1's ESI "from the Revised Relevant Period"—i.e.,

– 4 –

"July 1, 2022 until August 31, 2022," (ECF No. 38, PageID.803)—allows him to engage in broad discovery into Conlan's and HR1's servers between "December of 2024 through the filing of this lawsuit on March 12, 2025"; and (3) whether the Court's granting of a deposition of Ms. Chess "regarding her involvement with the paperwork connected to the hiring of Gonzales" back in 2022, (*Id.*, PageID.805), means he can question her about "Conlan's electronic records system and record keeping, related retention, and communications regarding the alleged agreement in question . . . between December 2024 and March 12, 2025." (ECF No. 40 ("Mot"), PageID.856–58.)

The Court should deny Defendant's motion for numerous reasons. It is the first instance Defendant has raised concern with Conlan's fees and costs; it serves only to delay proceedings; the expanded discovery he seeks constitutes harassment inappropriate for any stage of litigation; and nothing in the Court's order was ambiguous. More fundamentally, Defendant has squandered his opportunity to find the deleted emails that might minimize the portion of the sanctions that this Court has held in abeyance while the Court's limited discovery opportunity is carried out. Rather than focus his efforts on the discovery actually ordered—finding evidence of the emails he destroyed—Defendant wastes precious time and resources manufacturing procedural disputes while the October 6 deadline approaches.

## STANDARD OF DECISION

When a party is "concerned only with clarifying the scope of [a] district court's Order," it may "file[ ] a motion for clarification with the district court." *United States v.*

– 5 –

*Riley*, 609 F. App'x 837, 841 (6th Cir. 2015). Requests beyond mere clarification, however, are properly characterized as seeking "reconsideration," for which a motion related to a non-final order "must be filed within 14 days after the entry of the order," and may be brought only on limited grounds. E.D. Mich. Local R. 7.1(h)(2). Even when a court deems clarification appropriate, it may explain its original intent but may not use "clarification" to make substantive changes, thereby limiting corrections to clerical or oversight errors so the order "reflect[s] what was intended." *In re Walter*, 282 F.3d 434, 440–41 (6th Cir. 2002). A proper motion for clarification merely allows a court "to explain or clarify something 'ambiguous or vague' in the court's order or judgment." *In re Oakland Physicians Med. Ctr., L.L.C.*, No. 2:19-CV-11773, 2020 WL 1323995, at *2 (E.D. Mich. Mar. 20, 2020) (citation omitted).

## DISCUSSION

**I.   Defendant bypasses proper procedures to launch unsubstantiated attacks on Conlan's fee request.**

Consistent with the Court's explicit directives, Conlan submitted its bill of costs—in the form of a Request for Attorneys' Fees and Costs for Initial Court-Ordered Spoliation Sanctions—on September 8, 2025. (ECF No. 39.) In that request, Conlan sought $52,527.76 in initial sanctions, limited to fees and costs incurred in litigating the existence of the emails that Defendant deleted. (*Id.*, PageID.807.) The Court's Order authorized no briefing, objections, or responses to this submission—it simply directed Conlan to "submit a bill of costs." (ECF No. 38, PageID.803.)

Rather than follow proper procedure, Defendant circumvents the Court's streamlined process by embedding attacks on Conlan's fee request within his "clarification" motion. If Defendant wished to contest the fee award, the appropriate procedural step would have been filing a motion seeking permission to file objections, allowing the Court to determine whether briefing was necessary.

Instead, Defendant launches unsubstantiated accusations that Conlan's request contains "misleading if not inaccurate" information and "costs which Gonzales has already paid," while offering zero evidentiary support for these claims. (Mot., PageID.856.) Defendant never bothered to raise these purported concerns with Conlan before filing his motion, despite receiving the fee request days earlier. When Conlan contacted defense counsel to clarify what he meant by these allegations, the truth emerged: Defendant's counsel was simply confused about payment of a single N1D invoice. (Ex. 7, September 11 v. 3 Email Chain.) Conlan's counsel immediately confirmed that Conlan—not Defendant—paid the invoice, and notified Defendant of that fact. (*Id.*) Defendant apparently agrees, as he's had a week to provide contrary evidence and has not responded.

Accordingly, Conlan's fee request is not misleading and does not seek reimbursement for costs Gonzales has already paid. (Ex. 7.) More importantly, Defendant's baseless claims about the fee request provide no grounds to grant a motion seeking "clarification" and his motion should be denied.

**II. Defendant's clarification motion is unripe, as he has not yet even propounded or served any discovery to Conlan or HR1.**

Beyond his baseless attack on Conlan's bill of costs, the entirety of Defendant's motion is premature. In the month since this Court issued its Order granting sanctions and directing limited additional discovery to try and recover the emails Defendant deleted, Defendant has never propounded or served any discovery on Conlan or HR1. Despite Conlan's repeated demands since the day following the Court's Order that Defendant specify what ESI he seeks, Defendant has not served any discovery requests and has refused to describe any specific ESI he seeks beyond vaguely demanding access to "server(s)/devices/storage" from three employees plus unspecified additional servers, devices, and ESI from unidentified employees in 2025. (Ex. 1, p. 4.)

Now, after squandering a month in delay, Defendant prematurely seeks to compel Conlan to provide wholesale access to unspecified ESI beyond the Court's limited order—without ever requesting it or even describing what ESI he specifically seeks in his motion. Defendant cannot obtain what he claims he deserves, at least in part, because he has refused to ask for it. Defendant puts the cart way before the horse with this clarification motion and violates basic discovery procedures. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv) (stating a party may move to compel discovery only "if" that party first serves discovery and the opposing party "fails to produce documents … requested under Rule 34").

**III.     Even if Defendant's motion were timely, it hijacks the Court's targeted sanctions Order to instead conduct a harassment campaign disguised as legitimate discovery, ignoring the Court's clearly defined limitations.**

Defendant's interpretation of the Court's order defies both its plain language and underlying purpose. The Court permitted limited discovery for the limited purpose of recovering the specific deleted emails that Defendant intentionally destroyed. (ECF No. 38, PageID.803–05.) Despite the Court's clarity surrounding the additional discovery needed to determine whether the email(s) Defendant deleted could be obtained from an alternative source—the only "lost information" that the Court was "not yet convinced" could not "be 'replaced through additional discovery,'" (*Id.*, PageID.803 (quoting Fed. R. Civ. P. 37(e))—Defendant attempts to manipulate this directive to demand wholesale access to Conlan Tire's 2025 communications and ESI systems based on his unsupported "cover his tracks" theory that someone at Conlan fabricated his signature.

This audacious request reveals Defendant's detachment from reality. Despite being found to have intentionally spoliated evidence, Defendant characterizes the Court's careful findings after consideration of the evidence as a "conspiracy theory" and denies that any deletion occurred. (ECF No. 40, PageID.858 (Defendant argues his forger defense is "not a conspiracy theory any more than" the Court's finding that "Gonzales deleted emails"); *see also*, Ex. 6, Z. Mack 8/28 Email (arguing that "there is no evidence Gonzales deleted any relevant emails" and telling Conlan's counsel he "will not talk about the deleted emails as if the deletion were fact because it is not true.").)

– 9 –

Defendant's proposed discovery timeline—December 2024 through March 2025—exposes the harassing nature of his request. This period spans from Plaintiff's cease-and-desist letter through the filing of this lawsuit and would almost certainly yield nothing but attorney-client privileged communications and work-product prepared for litigation.* The request exceeds both the scope and purpose of the Court's sanctions order and lacks any evidentiary foundation. It contradicts established facts, serves no legitimate purpose, and violates basic proportionality principles that govern even routine discovery.

Equally telling, Defendant's approach would require searches across multiple email accounts and random devices, servers, and web hosts—imposing burdens grossly

---

* Defendant's sole "evidence" for pursuing unspecified ESI from December 2024 through March 2025 rests on his speculation that Conlan "was unable and/or refused to produce" the signed Agreement during this period. (ECF No. 40, PageID.858.) This claim lacks foundation. While text messages from early January 2025 show Defendant requesting his signed "Offer Letter"—the term both parties used to refer to the combined Offer Letter and Non-Solicitation Agreement—this request only undermines his current position. Afterall, why would Defendant seek a document he now claims never existed and, even worse, testified he received, read, and made the conscious decision not to sign? In any event, Texas law does not require production of personnel records to former employees and Conlan typically does not do so. Further, Conlan's temporary reluctance to communicate with Defendant in early 2025 directly resulted from Defendant's conduct following his termination. According to police reports, Defendant crashed Conlan's company truck while intoxicated, with subsequent blood testing revealing a 0.311 blood alcohol level. Police arrested him at the scene for displaying clear signs of impairment and discovered a loaded firearm in the vehicle. (Ex. 8, Police Reports.) Rather than accept responsibility for this serious incident, Defendant characteristically deflected blame onto Conlan by alleging a faulty truck and posturing potential negligence claims, prompting HR to cease direct communications. This context—not any inability to locate the signed Agreement—explains the communication gap Defendant now seeks to exploit through discovery harassment.

disproportionate to any legitimate benefit to the case. Even in typical cases, courts hold that "[m]ere suspicion" or speculation that an opposing party "may be withholding discoverable information" is insufficient to support an "intrusive examination" of the opposing party's electronic devices or information systems, *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007), because courts must "guard against undue intrusiveness" and to be "cautious in requiring" the forensic inspection of electronic devices, in order to protect privacy interests, *John B. v. Goetz*, 531 F.3d 448, 459–60 (6th Cir. 2008). And such expansive discovery is further unsupported here, given the Court's measured Order. The Court crafted its discovery order to address a narrow issue: Gonzales's improper deletion of emails from July 2022. Defendant cannot twist this limited remedy into a broad mandate for harassment disguised as discovery. His interpretation would eviscerate the boundaries the Court carefully established for present purposes.

Even beyond the harassing nature of Defendant's requests, there can be no credible claim that they fall within the narrow discovery outlined in the Court's Order, (ECF No. 38, PageID.803), and no "clarification" can remedy that fundamental problem. Regarding ESI, despite the fact that this Court's Order limits supplemental discovery to "the Revised Relevant Period"—July 1 through August 31, 2022—Defendant seeks unspecified access to Conlan's ESI from December of 2024 until March 12, 2025. Defendant cannot, with a straight face, claim that he needs clarification of whether the Court's Order permits this discovery when discovery, for now, is limited

– 11 –

to Defendant's spoliation.[†] Indeed, when the Court's Order first came down, Defendant recognized that he needed to move the Court for "an expanded Revised Relevant Period" to obtain discovery in 2025. (Ex. 1, p. 4.)

No better is Defendant's request regarding the deposition of Ms. Chess. Although this Court's Order limits any such deposition to topics related to "her involvement with the paperwork connected to the hiring of Gonzales," (ECF No. 38, PageID.805), Defendant now seeks to question her regarding "Conlan's electronic records system and record keeping, related retention, and communications regarding the alleged agreement in question during the period that Conlan was unable and/or refused to produce the alleged agreement (between December 2024 and March 12, 2025)," (Mot., PageID.857–58.) Ms. Chess's "involvement with the paperwork connected to the hiring of Gonzales" occurred back during his initial hiring, not in late-2024/early-2025. Thus, this request also falls outside of the narrow discovery this Court ordered, and no "clarification" can fix that fundamental temporal problem. The Court should reject these efforts to expand its carefully circumscribed order.

---

[†] It should be noted that general discovery has not yet begun in this matter. Because of Defendant's systematic delays this case remains in the preliminary injunction phase, with this Court simply trying to wind up the proceedings related to Conlan's motion for preliminary injunction. Indeed, Conlan previously served discovery on Defendant and sought reciprocal, expedited discovery between the parties back in early May, but Defendant denied Conlan's request, outright ignored its discovery requests, and served no discovery of his own.

## CONCLUSION

Defendant's motion represents another chapter in his ongoing campaign of delay and obstruction, while continuing to increase Conlan's costs and investment of time to pursue its contractual rights. Having been found to have intentionally destroyed evidence, Defendant now seeks to transform his misconduct into a discovery advantage that will harass Conlan Tire with an unlimited intrusion into mostly privileged emails. This serves only to exponentially increase Conlan's costs based on dissembling, while minimizing his financial responsibility for the chaos he created. The Court should deny Defendant's motion and reaffirm that its August 11 order means exactly what it says.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By: /s/ Ryan D. Bohannon
    Eric J. Pelton (P40635)
    Ryan D. Bohannon (P73394)
    Sean T.H. Dutton (P77515)
*Attorneys for Plaintiff*
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
epelton@khvpf.com
rbohannon@khvpf.com
sdutton@khvpf.com

Dated: September 18, 2025

– 13 –

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants on record.

                                                */s/Ryan D. Bohannon*
                                                    Ryan D. Bohannon (P73394)
                                                Kienbaum Hardy
                                                Viviano Pelton & Forrest, P.L.C.
                                                280 N. Old Woodward Ave., Ste. 400
                                                Birmingham, Michigan 48009
                                                (248) 645-0000
                                                rbohannon@khvpf.com