UNITED STATES DISTRICT COURT
FOR THE EASTEN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONLAN TIRE CO., LLC,

    Plaintiff,

v.

ALEC "A.J." GONZALES,

    Defendant.

Case No. 25-cv-10701-SDK-APP

Hon. Shalina D. Kumar

Magistrate Judge Anthony P. Patti

**Conlan Tire's Supplemental Brief
Regarding Defendant's Spoliation of Evidence**

After finding Defendant spoliated evidence, this Court held in abeyance full sanctions pending limited discovery to determine if the deleted emails could be replaced and, in so doing, ordered Defendant to produce all devices and accounts from 2022. (ECF 38, pp. 9-11.) Yet, while already facing spoliation sanctions and being expressly warned by the Court that more may be coming, Defendant violated this Court's August 11 Order and committed perjury to conceal evidence. Last month, Defendant filed a declaration stating he maintained no other iCloud accounts. (ECF 42-1, ¶¶4-5, 10.) He lied. N1 Discovery uncovered a second iCloud account registered to Defendant, actively used in 2022, and last accessed May 4, 2025—*during this litigation*. (Ex. 1, N1 Report § 7.) Defendant concealed this account in defiance of the Court's Order and, even after receiving N1's report, continues that defiance.

This supplemental brief explains (1) how the Court-ordered discovery confirmed Defendant's spoliation, both old and new; and (2) why Defendant's pattern of perjury, obstruction, and repeated violations of Court orders (chronologically detailed in the Appendix at Ex. 2) warrants harsh sanctions—default judgment, a permanent injunction, and recovery of all of Conlan's related fees.

**I.     Discovery confirmed Defendant's intentional and ongoing spoliation.**

The Court ordered four categories of discovery. While none produced the deleted emails, each exposed further evidence of Defendant's spoliation and deception.

**Category 1: Yahoo Email Account Search (July 1–9, 2022)** After searching ChatGPT about permanent email deletion, Defendant changed his story. He

abandoned his original testimony—"I don't believe I signed the Agreement"—and claimed instead that he had seen the Agreement and consciously refused to sign it. (ECF No. 18-1, PageID. 219, ¶¶ 4-5; ECF No. 28, PageID.355, ¶ 3.) This admission boxed him into a corner: all evidence in the case shows the Agreement must be signed before receiving a start date, it is always exchanged via email, and it was missing from his Yahoo account. Confronted with Conlan's sanctions motion and the ChatGPT evidence about email deletion, Defendant fabricated an escape. He swore under oath that he received "all" documents "in person" at Conlan's office—never by email—and, though he still does "not recall" how he reviewed the Agreement, he claimed the "most plausible" explanation" is that it was presented to him at Conlan's office. (ECF 35-2, PageID.732, ¶¶5-7.) The Court-ordered search exposes this lie. N1 recovered emails proving Defendant exchanged signed pre-employment documents with Conlan electronically before his first day, exactly as Kenrick and Chess testified. (Ex. 3, Emails.) Because Defendant had previously refused to provide these emails to Conlan, they were solely in Defendant's possession when he filed his perjured Declaration. Though the newly discovered emails do not include exchange of the signed Agreement itself, they demolish Defendant's foundational premise that all pre-employment documents were signed in person. So, before the Court are two divergent stories—the first, told only by Defendant, supported by nothing but speculation and perjury, and unsupported by any evidence, and the second comprising all admissible evidence (Kenrick's and Chess's testimony, standard business practices, expert signature confirmation, and these

– 2 –

uncovered emails). The truth is obvious: Defendant received the Agreement by email, signed it, emailed it back, and destroyed the proof.

**Category 2: Production of All 2022 Devices and Accounts.** The Court ordered Defendant to produce all devices/cloud accounts used during 2022, and the iCloud backup of his current phone. Defendant testified he had no further devices/accounts to produce and no backup of his phone. ECF 42-1, ¶¶4-5, 10. This is more perjury. N1's forensic exam revealed three of Defendant's obstructions:

1. Defendant concealed a second iCloud account—xgetmoney14x@yahoo.com—registered to Defendant's name and phone number and used multiple times in 2022. (Ex. 1, § 7.) Defendant last accessed the account during this litigation, and so knew it existed when he swore under oath to the contrary. He perjured himself, concealed evidence, and failed to comply or explain himself even after receiving N1's report.
2. The laptop Defendant previously submitted for examination during this case was manufactured in 2024—it was not a device from 2022. Defendant, accordingly, forced Conlan to waste resources examining irrelevant hardware that could not possibly contain 2022 emails.
3. Defendant refused to produce his current cell phone—the functional equivalent of the iCloud backup this Court ordered him to produce.

Defendant has obstructed discovery, defied Court orders, and bled Conlan of resources for six months. He controls every location where the emails or other evidence might exist: his 2022 cell phone (under *stipulated* order to produce, yet he claims it's gone), his 2022 laptop (never produced despite two Court orders and, in its stead, the evasive production of a meaningless 2024 laptop), his current phone (the functional equivalent of what the Court ordered him to produce), and a second iCloud account (concealed despite two Court orders). He will not comply because full forensics would

expose his scheme: a fabricated defense, wasted litigation costs, and deliberate mocking of this Court's authority. This is willful defiance of court orders, escalating at every turn.

**Category 3: Reciprocal Discovery of Conlan's ESI.** Conlan offered Defendant to conduct a forensic exam of Conlan's relevant computers and accounts, reiterating its offer since back in April 2025. Defendant declined each time, including after the Court's August 11 Order. For its part, Conlan again reviewed its storage and systems, and confirmed it no longer possesses the emails.

**Category 4: Katie Chess Deposition.** Chess, Conlan's HR coordinator, testified that she audited Defendant's file in August 2022 and saw the signed Non-Solicitation Agreement. (Ex. 4, Chess Dep. 14.) She is "sure" these documents existed when she sent the file to the locked file room because she has "never" sent a file without them. (Ex. 4, 12–15; Ex. 5, Chess Dec., ¶¶ 9–10.) Regarding her email about "missing paperwork," Chess testified that she is certain she received Defendant's signed Agreement and her email either prompted Defendant to return it, or Kenrick found it and gave it to her, or that it was missing only initials rather than the signature itself (a common occurrence). (Ex. 4, 11–12.) Regardless, she is "absolutely positive" she has never audited a file completely missing a signed Non-Solicitation Agreement, including Defendant's. (Ex. 4, 12–15; Ex. 5, ¶¶ 9–10.)

Chess further confirmed that the Offer Letter and Agreement are handled by the HR manager via email before employment begins. (Ex. 4, 16.) She knows she sent the subsequent onboarding documents to Texas for Defendant's first day because her

– 4 –

handwriting is on it. (Ex. 5, ¶¶ 3.a, 5, 7.) She has never sent an Agreement to be signed in person, because they are always exchanged electronically before the start date. (*Id.*)

Chess's testimony demolishes Defendant's forgery conspiracy. All evidence confirms Defendant signed the Agreement in the normal course and the July 2022 email chain existed: Kenrick's and Chess's testimony, Defendant's admission he read the Agreement, and expert confirmation of his signature. Defendant destroyed those emails—including the one Kenrick sent attaching the Agreement that Defendant's own testimony confirms—because the metadata would prove he received it, responded to it, and signed the Agreement, exposing his lies throughout this litigation.

## II. Default judgment and severe monetary sanctions are warranted.

The Court's August 11 Order gave Defendant a final opportunity to comply with discovery. Defendant responded by committing perjury, concealing a second iCloud account, and refusing to produce devices this Court ordered him to produce. This escalating misconduct merits "sanctions of escalating severity." *Smith v. Wayne Cnty.*, 2012 WL 6084179, at *7 (E.D. Mich. Oct. 11, 2012). He has shown he will lie under oath, conceal evidence, and defy court orders even while under explicit warning that more sanctions could be coming. Only default judgment—a permanent injunction enforcing the Agreement—and substantial monetary sanctions will remedy the prejudice Defendant has inflicted and vindicate this Court's authority. *In re Buscone*, 61 F.4th 10, 29–30 (1st Cir. 2023); *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir. 1995); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817–18 (8th Cir. 2001).

        Respectfully submitted,

        KIENBAUM HARDY
        VIVIANO PELTON & FORREST, P.L.C.

        By: */s/Ryan D. Bohannon*
           Eric J. Pelton (P40635)
           Ryan D. Bohannon (P73394)
           Sean T.H. Dutton (P77515)
        *Attorneys for Plaintiff*
        280 N. Old Woodward Ave., Ste. 400
        Birmingham, Michigan 48009
        (248) 645-0000
        epelton@khvpf.com
        rbohannon@khvpf.com
        sdutton@khvpf.com

Dated: October 20, 2025
585600

– 6 –

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants on record.

*/s/Ryan D. Bohannon*
Ryan D. Bohannon (P73394)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
rbohannon@khvpf.com

585600